## Commonwealth *v.* Hardy, Appellant.

Argued March 17, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harold Gondelman*, with him *Joseph A. Steedle*, for appellant.

*Edwin J. Martin*, Assistant District Attorney, with him *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, November 15, 1966:

Donald Hardy,[1] defendant, was arrested for allegedly killing with a gun Anthony Bishop, 33 years of age,

[1] Born on May 9, 1946, Donald "House" Hardy was eighteen years old when he was arrested. His nickname of "House" came from his huge 265 lb. frame and his 6 foot 6 inch height. He had been a football star at Westinghouse High School from which he had graduated and had received a football scholarship to attend Virginia State College in Petersburg, Virginia. However, due to an

who was found in an automobile on Odessa Way near Lincoln Avenue in the City of Pittsburgh, Pennsylvania, at 12:02 a.m., December 24, 1964. Police interrogated Hardy for approximately four and one-half hours on December 24, 1964, for fifteen minutes on Christmas day, and for three more hours on December 26, 1964, before he orally confessed to the slaying. Shortly thereafter on December 26th, Hardy signed a written admission of the crime, and, on December 27, 1964, permitted the police to make a tape recording of his confession. At no time during these events was defendant represented by counsel.

Before the trial began, defendant's counsel made a motion to suppress Hardy's confession. Pursuant to the mandate of *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), extensive testimony, which required two full days to hear, was taken. The trial court subsequently dismissed defendant's motion to suppress. On April 9, 1965, the jury returned a verdict of first degree murder against defendant, and the penalty was fixed at life imprisonment. Defendant then filed a motion for a new trial which was unanimously refused by the trial court en banc on November 17, 1965. From the entry of judgment of sentence defendant has appealed to our Court.

Prior to trial, Hardy pleaded not guilty to the murder of Anthony Bishop. At the trial, his written and his taped confessions which were identical in content were admitted into evidence. In these confessions, Hardy, who alleged he was drunk, claimed that his gun went off while he was attempting to rob the victim. However, upon taking the stand at trial, Hardy contradicted these confessions by denying that he tried to

---

argument with the football coach, he left Virginia State after only one-half of one semester. At the time of the crime he was neither in school nor working. Hardy had no prior criminal record.

rob the victim, but rather that the gun went off while he and the victim were arguing about Hardy's failure to fulfill his promise to find a prostitute for the victim.[2] This contradiction by Hardy at trial of a vital part of his pretrial confessions puts the issue squarely before our Court whether or not the confessions should have been admitted into evidence by the lower court.

At the pretrial hearing to ascertain whether or not Hardy's confessions should be excluded from trial, there was testimony that on December 24, 1964, before any interrogation had begun, that Hardy was warned of his constitutional rights to be silent and to have counsel: "Q. What did you [City Detective Tercsak] say to him [Donald Hardy when he was first brought to the police station in the late afternoon of Dec. 24, 1964]? A. To which first that he had a right either to make a statement or refuse to make a statement; second, that if he did make a statement it could be used for or against him at the time of his trial; and *third, he had the right to be represented by an attorney of his own choice before saying anything.* He said that he understood these things, he did not want a lawyer at this time. The only thing that he did want was a Bible which I gave him." (Emphasis added)

There was further evidence that, on December 26, 1964, the third day of interrogation, Hardy was asked this question at the beginning of his confession which was reduced to writing for his signature: "Q. Before going any further I [City Detective McDermott] am now going to advise you of your constitutional rights in which you have the right to either give or refuse to give this statement. It can be either used for you or against you at the time of your trial. *At this time you*

---

[2] Hardy's trial testimony corroborated his previous confessions in all other respects except the circumstances surrounding the shooting in the automobile.

*also have the right of an attorney.* Will you give a statement? A. Yes." (Emphasis added)

At no other time was defendant warned of his rights during the three days of interrogation, and of course, at no time during this time did he have the benefit of counsel. The trial court felt that this factual situation was sufficient to find a knowing and intelligent waiver of counsel: "In addition, it was determined by the [trial] court and the [trial] court found as a fact that the defendant told the interrogating officers that he did not want counsel. Was this an intelligent waiver of counsel? *Certainly if it was not, it would be difficult to imagine a case in which you could have an intelligent waiver.*" (Emphasis added).

"The defendant is an intelligent young man, having graduated from high school with excellent grades. He was a high school football star and was awarded a college scholarship because of his athletic prowess. He attended college for a short time and left because of an argument with his football coach. The [trial] court, therefore, is of the opinion that, when the defendant's constitutional rights were explained to him and he refused the assistance of counsel, he fully understood what he was doing and his decision not to have counsel represent him when he made his confession was the result of his free will and can be classified as an intelligent waiver, as referred to in the Escobedo case."

We agree with the court below. Under *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), the confession of Hardy made during an "in-custody" questioning when he was without the assistance of counsel, might be held inadmissible. However, *Miranda* is not presently applicable since the trial of Hardy began and was terminated prior to the effective date of *Miranda.* See: *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966). However, since Hardy was tried subsequent to June 22, 1964—the effective date of *Escobedo*

*v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964)[3]—the guidelines set forth in *Escobedo* are applicable in the case at bar. That the rules as to "in-custody" interrogation enunciated in *Escobedo* differ substantially from the rules enunciated in *Miranda* is clear. A study of *Johnson* renders inescapable such a conclusion for otherwise why would the U. S. Supreme Court in *Johnson* have stated that the *Escobedo* ruling would apply to cases tried on and after the date of such ruling but that the *Miranda* ruling would not apply until a date two years later.

Hardy presently contends that the *Escobedo* ruling invalidates his confession solely because he was without counsel during the "in-custody" interrogation and not adequately warned of his right to the assistance of such counsel. In *Commonwealth v. Coyle,* 415 Pa. 379, 403, 203 A. 2d 782; *Commonwealth ex rel. Linde v. Maroney,* 416 Pa. 331, 335, 336, 206 A. 2d 288; *Commonwealth ex rel. Johnson v. Myers,* 419 Pa. 155, 157, 158, 213 A. 2d 359, we rejected such a contention; the *Johnson* ruling attests to the soundness of such rejection.

In other words, as *Johnson* demonstrates, *Escobedo* is limited in its application and, under *Escobedo* and in those instances wherein *Miranda* does not apply, a confession is not rendered invalid solely because counsel is not afforded during "in-custody" interrogation, *except* where the assistance of counsel is *requested* and where the person in custody is not *effectively* warned of his constitutional right to remain silent.

In the case at bar, the record reveals that Hardy was warned: (1) that he had a right either to make a statement or to refuse to do so; (2) that, if he did make a statement, such statement could be used against him in court; (3) that he had a right to be represented

[3] *Johnson v. New Jersey,* supra.

by an attorney of his own choice before making any statement. Moreover, the record discloses—and the court below so found—that Hardy refused the assistance of counsel and at no time did he *request* the assistance of counsel. In such factual posture, since there was no absolute obligation on the part of the police to furnish him with counsel, the failure to do so per se does not render the confession inadmissible under *Escobedo*.

Our scrutiny of the instant record indicates that the circumstances under which the instant confession was elicited are not offensive to the principles enunciated in *Escobedo*. Hardy made a sufficiently knowing and intelligent waiver of counsel to permit his subsequent confession to be accepted into evidence.

Hardy contends, further, the trial court erred in four other respects: (1) in denying Hardy's motion to suppress a camel hair coat and in overruling his objection to its introduction into evidence; (2) in admitting into evidence the report of the finding of the coroner's jury; (3) in instructing the jury on the weight to be given a confession, and (4) in failing to adequately charge the jury in regard to murder committed in the perpetration of, or attempting to perpetrate, certain felonies. We have carefully considered these contentions and find them without merit.

On December 24, 1964, two officers, armed with an arrest warrant for Hardy and a search warrant for a gun,[4] went to the house where Hardy lived with his father. This house was owned by the senior Hardy and the defendant simply had a room therein. Hardy was not at home. When asked whether his son owned a gun, Mr. Hardy replied negatively and gave the officers his permission to look through his son's room.

---

[4] There is some conflict as to whether the search warrant was properly issued but it is undisputed that it was never used.

Finding nothing in that room, the officers prepared to leave when they noticed a camel hair coat thrown across a chair in the living room. Mr. Hardy stated it belonged to his son and, when asked if the officers could take the coat, he gave his permission.[5] Hardy claims the taking of the coat under these circumstances constituted an illegal search and seizure.

Even assuming, *arguendo,* that a valid search warrant was never issued Hardy has no right to complain. Hardy's father gave his permission to the officers to enter and search the house and the premises *which he owned* and in which his son lived with him. Under the circumstances presented here the voluntary consent of Hardy's father to search *his own* premises is binding on Hardy and precludes his claim of violation of constitutional rights: *Commonwealth v. McKenna,* 202 Pa. Superior Ct. 360, 195 A. 2d 817 (1963) ; *U. S. ex rel. McKenna v. Myers,* 232 F. Supp. 65 (D.C. Pa. 1964) affirmed per curiam 342 F. 2d 998 (C.A. 3, 1965) ; *U. S. v. Eldridge,* 302 F. 2d 463 (1962) ; *Fredricksen v. U. S.,* 266 F. 2d 463 (1959) ; *Woodard v. U. S.,* 254 F. 2d 312 (1958) ; *U. S. v. Sferas,* 210 F. 2d 69 (1954) ; 36 Temple Law Quarterly 95 (1962). Cf. *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963). There is no contention that the consent or permission was given under coercion for Mr. Hardy testified it was voluntarily given.

At trial, the deputy coroner of Allegheny County, in response to the question of what the coroner's jury found as to how Bishop had met death, stated that Bishop died of a gunshot wound of the head caused by a gun "in the hands of Donald Hardy". Hardy's counsel objected and the trial court promptly struck out the latter part of the statement. The finding of the coroner's jury was irrelevant and should not have

---

[5] The coat fibers matched fibers found at the murder scene.

been testified to by the deputy coroner. Nevertheless no prejudice resulted to Hardy for he admitted, both at the trial and in his written confession, that the gun was in his hand when Bishop was shot. The defense never contended that the gun was not in the hands of Hardy when the fatal shot was fired.

The next assignment of error questions that portion of the judge's charge wherein he stated: "Now a voluntary confession is the strongest kind of evidence." Hardy claims this was so erroneous and prejudicial to him as to require a new trial. He contends that, although the trial court discussed the question of voluntariness, it failed to make clear to the jury that, even if the confession were found to be voluntary, the weight to be given the confession was a matter for their determination. Counsel contends that the instruction gave the confession undue weight and emphasis in the minds of the jurors to the prejudice of Hardy. The challenged portion of the court's charge in regard to the confession is as follows: "Now the defendant in this case made a confession in writing, and this confession was read to you. The confession was also recorded, and you heard it. Now a voluntary confession is the strongest kind of evidence. However, if the confession was involuntary, you should completely disregard it. It is your duty to first determine if the confession was voluntary. In determining whether the confession was voluntary, the test to be used is whether the behavior of the law enforcement officials was such as to overbear the confessor's will to resist and bring about a confession not fully self determined. . . . If you come to the conclusion that the confession was involuntary, you should disregard it entirely. Now, if you come to the conclusion that it was a voluntary confession, the truthfulness of the confession is still a matter for your consideration."

While the sentence complained of *standing alone* might be prejudicial to the defendant a reading of the instructions in their entirety reveals that the court continued on to emphasize that the confession had no value whatsoever unless it was voluntary and explained to the jury the test to be used in determining whether it was voluntary or not. Thus qualified by the subsequent instruction we find the charge technically correct. The situation is strikingly similar to *Commonwealth v. Blanchard,* 345 Pa. 289, 26 A. 2d 303, 27 A. 2d 48 (1942) where defense counsel objected to a similar charge. We stated there that "Once it is established that a confession was freely made it is not, as defendant's counsel suggests, the weakest, but, on the contrary, the strongest evidence of guilt." (at p. 291).

The final contention of Hardy is that the trial court erred on the question of intent in a felony-murder. While the issue is not properly before this Court since it was not presented in the exceptions filed or on argument for a new trial and not raised in the court below, nevertheless because of the gravity of the offense we will consider it. Hardy contends that the element of intent was not properly explained in view of the issue of defendant's intoxication at the time of the robbery; that a specific intent is required before one can be convicted of robbery; that where one is incapable of entertaining a specific intent he may not be convicted of robbery, even though the incapacity resulted from voluntary intoxication; and that, if Hardy was incapable of forming the specific intent necessary for robbery, the felony-murder rule has no application. The court charged the jury on the definition of robbery and, in so doing, on the intent necessary therefor. The jury was also instructed that, if the gun were discharged by accident, the defendant would not be guilty at all. In so doing the charge was in ac-

cordance with the law. If the jury found Hardy guilty of robbery he would be guilty of murder under the felony-murder rule and his intent, as related to the murder, would be immaterial. See *Commonwealth v. Wooding*, 335 Pa. 555, 50 A. 2d 328 (1947); *Commonwealth v. Brooks*, 355 Pa. 551, 50 A. 2d 325 (1947). The charge on the question of intent was adequate.

Judgment of sentence affirmed.

Mr. Justice COHEN concurs in the result.