Commonwealth, Appellant, *v.* Jefferson.

Argued September 27, 1966. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Norman J. Pine,* First Assistant District Attorney, with him *A. Alfred Delduco,* District Attorney, for Commonwealth, appellant.

*Samuel J. Halpren,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 4, 1967:

The Commonwealth appeals from an order below granting a new trial to Elouise Jefferson who was convicted by a jury of murder in the first degree with the punishment fixed at life imprisonment. The new trial was granted solely because the trial court concluded that prejudicial evidence was erroneously admitted at trial.[1]

The crime involved the fatal stabbing of one Marie Huggins on a public street in Valley Township, Chester County. Shortly after the incident, as a result of a phone call from headquarters, police officer Edward Hollingsworth, who was on patrol, proceeded to the hospital to investigate. In the hospital accident ward, he found several persons, including the defendant, Jefferson, who had a towel over her forehead and left eye. In answer to his inquiry and to questions of Michael

---

[1] No challenge to the Commonwealth's right to appeal has been interposed. Since a pure question of law is presented, the appeal is proper. See, *Commonwealth v. Melton,* 402 Pa. 628, 168 A. 2d 328 (1962).

Zevtchin, chief of police, who arrived a short time later, Jefferson made certain inculpatory statements without first being warned she had the right to remain silent or to have the assistance of counsel during the questioning. Testimony of these statements was admitted in evidence at trial; it may be summarized as follows:

Upon entering the hospital accident ward, Hollingsworth asked: "What happened?" Jefferson replied: "There was a fight." .... "They jumped me and I stabbed them." Hollingsworth immediately phoned Zevtchin at his home, who responded by coming to the hospital within minutes.

Upon his arrival Zevtchin received a short briefing from Hollingsworth in the hallway of the hospital and then entered the accident ward. He asked, "Who did the stabbing?" Jefferson raised her hand and said, "I did. I think I got the wrong one." Then in response to further questions by Zevtchin, Jefferson detailed the occurrence and its background.

The court below, relying on our decision in *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965),[2] concluded that since the statements to officer Zevtchin were made absent forewarning of constitutional rights, testimony thereof should have been excluded at trial. *Negri* has since been reconsidered by this Court and is not now controlling. See, *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966).

Since the trial herein concluded on April 22, 1965, evidence of the inculpatory statements involved was not rendered constitutionally inadmissible at trial merely because the police did not adhere to the "in-custody" warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). See, *Johnson v. New Jersey,* 384 U.S. 719 (1966); *Davis v. North Carolina,* 384 U.S. 737 (1966); and, *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A. 2d 291 (1966). However, since the trial

---

[2] The instant trial was prior to the *Negri* decision.

was subsequent to June 22, 1964, *Escobedo v. Illinois,* 378 U.S. 478 (1964), does apply, and whether or not Jefferson's constitutional rights were violated at the time the statements were made must be determined in the light of that decision. See, *Johnson v. New Jersey,* supra.

It is now settled that under *Escobedo,* an individual subject to police questioning is not deprived of his constitutional right to counsel unless such assistance is requested and denied.[3] See, *Commonwealth v. Schmidt,* supra. Hence, since Jefferson made no request for counsel, the absence thereof, or an effective waiver of the right thereto, did not ipso facto render testimony of the statements constitutionally inadmissible. But, Jefferson was also not advised of her right to remain silent and this, in our opinion, under the teaching of *Escobedo* precluded evidentiary use of the statements made to Officer Zevtchin.

While it is true that *Escobedo,* in the main, dealt with the right to counsel as guaranteed by the Sixth Amendment to the United States Constitution, it also concerned the right to remain silent, stemming from the Fifth Amendment proscribing self-incrimination. This is made clear in *Miranda v. Arizona,* supra, at page 465, where the court in discussion and explanation of the *Escobedo* decision said: "Our holding there stressed the fact that the police had not advised the defendant of his constitutional privilege to remain silent at the outset of the interrogation, and we drew attention to that fact at several points in the decision . . . . This was no isolated factor, but an essential ingredient in our decision."

Counsel for the Commonwealth indicates agreement with our conclusion, that aside from any right to the assistance of counsel, *Escobedo* requires that an indi-

---

[3] This, of course, is not true in a case involving police interrogations governed by *Miranda v. Arizona,* supra. However, as noted before, *Miranda* does not apply here.

vidual, subject to police questioning be forewarned of the right to remain silent once "the adversary system" begins to operate. However, it is earnestly argued that the point had not been reached in the investigation of the present case where such warning was required. In other words, it is urged that even at the time the statements were made to Officer Zevtchin, the adversary system had not yet begun to operate, and the police were still engaged in a general questioning of citizens to determine just what did happen.

The above contention is certainly correct so far as it relates to the statements of Jefferson to Officer Hollingsworth. As of that time there is not a scintilla in the record to indicate that this officer had even a suspicion Jefferson committed a criminal act. His inquiry, "What happened?" was directed to all those present in the accident ward, and to no one in particular. Jefferson's response was truly a volunteered, spontaneous, freely-made utterance to general questioning of citizens in the police fact-finding process. The evidentiary use of such volunteered statements is in no way affected by either *Miranda* or *Escobedo*. Cf. *Commonwealth v. Eperjesi*, 423 Pa. 455, 224 A. 2d 216 (1966), and cases cited therein. However, when the statements were made in response to questions of Officer Zevtchin, a new situation had arisen. As of then, Zevtchin knew there had been a stabbing and Jefferson was, by her own admission, the perpetrator. She should immediately have been advised of her right to remain silent before further questioning ensued, and such warning not having been given renders her statements made from that point on constitutionally inadmissible.

In *Escobedo*, the United States Supreme Court spoke of the adversary system beginning when the questioning situation changed from a general inquiry into an unsolved crime, to one which focused on a particular suspect for the purpose of eliciting a confession. This

posed a problem since the exact demarcation between the investigatory and accusatorial stages in police inquiries is frequently difficult to pinpoint.[4] In an effort to eradicate this difficulty, the court in *Miranda*, specifically said the adversary system begins to operate and warnings of constitutional rights are required once questioning is initiated of a person who "has been taken into custody or otherwise deprived of his freedom of action in any significant way." This, it said "is what we meant in Escobedo when we spoke of an investigation which had focused on an accused." See, *Miranda v. Arizona*, supra, n.4 at 444.[5] Herein, after Jefferson's admissions to Hollingsworth, the investigation had certainly begun to focus on her as the accused; and, she was certainly not free to leave and at least technically "in custody." Custodial interrogation is not limited to police station questioning or that occurring after a formal arrest.

Nor are we persuaded, that the failure of defense counsel to enter a timely objection to the challenged evidence at trial constituted an effective waiver of the right of Jefferson to raise the question of the admissibility of the evidence in the new trial motion below. As a general rule, if the admission of evidence is to be reviewed, an objection to the introduction thereof, with stated reasons, should be noted of record at trial. See, 1 Henry, Pennsylvania Trial Evidence §§418, 419 (3d ed. 1940). And, an insistence on compliance with this procedural regulation serves a legitimate state interest. However, an individual foregoes the privilege of assert-

---

[4] For a scholarly discussion of the accusatorial stage in a police inquiry, as distinguished from the investigatory stage, see, "The Criminal Prosecution in England", by Lord Patrick Devlin.

[5] This has been interpreted to mean that the *Miranda* and *Escobedo* rules began to operate when the questioned individual might be compelled (as distinguished from "coerced") in some way to incriminate himself. See, *People v. Allen*, 272 N.Y.S. 2d 249 (1966); 79 Harv. L. Rev. 935, 982 (1966); and 28 U. Pitt. L. Rev. 77, 79 (1966).

ing a claim of violation of constitutional rights only if he knowingly and intelligently decides not to insist thereon, or if his counsel for purposes of trial strategy decides not to raise the question. See, *Henry v. Mississippi,* 379 U.S. 443 (1965). See also, State-Post Conviction Remedies, 40 N.Y.U. L. Rev. 170-171 (1965).

The instant trial occurred when the law was in a state of confusion as to the warnings required to be given an accused during police questioning in order to render any statements he might make, as a result thereof, constitutionally admissible against him at trial. In fact, until the announcement of the decision in *Miranda v. Arizona,* supra, the full significance of *Escobedo* which is controlling here was in serious doubt, and if the courts were confused, defendants and their counsel could hardly be charged with knowledge of their rights under that decision.

Moreover, a reading of the record does not indicate that the failure to object involved any trial strategy or any knowing and intelligent waiver of Jefferson's constitutional rights. Under the circumstances, it is our conclusion that the failure to object did not constitute a waiver of the claim.

Order affirmed.