Burke, J. (dissenting).
I cannot conclude, as the majority has, that this defendant, at the time the incriminating statements were made, was not “ deprived of his freedom of action in any significant way.” For this reason I am constrained to vote for reversal, notwithstanding my conviction that the *12 defendant’s statement to the officer was not the product of a will overborne and despite my belief that the defendant is guilty of the crime charged.
The decision of the United States Supreme Court in Miranda v. Arizona (384 U. S. 436) represents a mandate, which we are called upon in this case to interpret for the first time, and to determine the exact meaning that is to be given to it so that we may both set a standard for determinations by the courts below and a guide for police officers.
At one point in its opinion in Miranda the Supreme Court referred to the practices of the Federal Bureau of Investigation (FBI), which it categorized as consistent with the procedure delineated therein. It was then pointed out that FBI agents are required to warn all suspects of their right to remain silent and right to counsel, as well as of the incriminating effect of any statements at the outset of an interview (id., pp. 48A-485).*
It is not at all clear whether the approbation of the procedure followed by the FBI was intended as an expression of what the court felt constituted the ideal in police conduct — or whether it was intended as an illustration of what is to be required, as a minimum, from the police. Consequently, the courts of different States have arrived at various interpretations of what the Supreme Court meant by “ deprived of his freedom of action in any significant way.”
The majority opinion has construed “ the language and purpose of * * * Miranda ” to be the protection of the individual’s freedom of choice—to answer or not answer—in situations which are inherently coercive. To reduce Miranda to situations where a person feels compelled to respond to an inquiry is, in my opinion, an illogical distortion of the term “freedom of action.” The “purpose” behind Miranda notwithstanding, “ freedom of action ” is a concept logically independent of “compulsion to speak.” The Supreme Court, for whatever its reasons, declared that these four-fold warnings must be given when a suspect’s freedom of action is “ significantly ” impaired. This is all we are called upon to decide here. It is not our task under Miranda to consider whether in laying *13 down this rule the Supreme Court may have in fact laid down a rule broader than was necessary to achieve the purposes for which it was formulated. Our task is only to apply that rule.
The majority itself proposes a rule which I believe accords with the dictates of Miranda, namely, in requiring that the warnings be given whenever a suspect either is in fact or reasonably believes himself to be deprived of his freedom of action in any significant way. In applying this rule to the case at bar, however, the majority introduces the extraneous consideration of whether or not there were, in addition, elements of compulsion to answer the arresting officer’s questions. The latter element is not only irrelevant to a determination of whether the Miranda warnings were required, its application generally will require our courts and law enforcement officials to become involved in every case such as this in the extremely difficult process of assessing whether or not the coercive aspects of the situation were such as to compel the suspect to answer the questions of an arresting officer, not merely whether or not a reasonable man would have felt his freedom of action significantly impaired.
Rejecting this concept of “purpose” and accepting for the moment the test proposed by the majority, I am of the opinion that the defendant was here deprived of his freedom of action in a significant way at the time that he made these oral admissions. When the detective approached him, it is clear that defendant was the only suspect as far as a possible accomplice was concerned. The ‘ ‘ fact-finding ’ ’ stage had been concluded. The police investigation had reached the “ accusatorial stage.” Immediately following his meeting with the defendant, the detective directed his two friends to leave them alone. His initial inquiry was whether Rodney P. knew Daniel W., the youth who was arrested and who had implicated him. After an affirmative response, the detective pressed the defendant and succeeded in eliciting the oral admission. This statement strikes me as an admission made by a suspect under circumstances which violate the rule laid down in Miranda. I do not understand how any conclusion can be reached other than that it was reasonable for this 16-year-old youth, who had been isolated from his companions and questioned specifically with regard to the commission of a crime, to believe that he would be detained until the *14 question was answered to the satisfaction of the detective. This conclusion is in accord with the Supreme Court’s analysis in Miranda. Yet the majority, by applying their test, does not arrive at this result.
As I stated at the outset, the importance of this case is that it may be used as a vehicle to instruct the courts below on the minimum requirements of Miranda. The rule proposed by the majority does nothing toward resolving the conflicts now prevailing on this point. (Cf. People v. Glover, 52 Misc 2d 520; People v. Allen, 50 Misc 2d 897, revd. 28 A D 2d 724; People v. Shivers, 28 A D 2d 857.)
In formulating a purposive interpretation of Miranda, I am in accord with the majority that a subjective approach hinging upon the particular defendant’s analysis of a situation would impose an unreasonable burden upon law enforcement agencies, requiring them to anticipate a person’s “ frailties or idiosyncrasies;” However, I disagree with their rejection of the Supreme Court of Pennsylvania’s application of Miranda in Commonwealth v. Jefferson (423 Pa. 541). There, the defendant was truly a suspect in technical custody. Miranda, as I view it, requires an answer to the hypothetical ‘ ‘ If the person had remained silent or expressly refused to answer under privilege of self-incrimination, would the police have permitted him to leave?” Whether the defendant was aware of his right to remain silent in this case is not decisive, since Miranda requires a four-pronged warning. Bather, whether the defendant had been deprived of his freedom of action in a significant way as he was in Jefferson is the prime consideration, as the Supreme Court has determined.
Accordingly, the order of the Appellate Division should be reversed.
Judges Van Voorhis, Scileppi, Bergan and Breitel concur with Judge Keating ; Judge Burke dissents and votes to reverse in an opinion in which Chief Judge Fuld concurs.
Judgment affirmed.

 See Evans v. United States (377 F. 2d 535) for an illustration of the FBI practice.