Commonwealth *v.* Smith, Appellant.

Argued May 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused December 26, 1972.

*Hugh S. Rebert,* Assistant Public Defender, for appellant.

*Samuel K. Gates,* Assistant District Attorney, with him *Harold N. Fitzkee, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 17, 1972:

In 1966 appellant William Smith, Jr., was tried by a jury and found guilty of second degree murder. A direct appeal to this Court resulted in a narrow affirmance of his judgment of sentence. *Commonwealth v. Smith,* 424 Pa. 9, 225 A. 2d 691 (1967).[1]

On June 22, 1971, appellant filed a petition pursuant to the Post Conviction Hearing Act.[2] In that petition, which was dismissed without a hearing, appellant alleged that his confession, obtained on August 28, 1964, and introduced at trial, was secured in a manner violative of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964). We agree with appellant and accordingly reverse the judgment of sentence and remand for a new trial.[3]

---

[1] Justice MUSMANNO wrote an opinion in which only two justices joined affirming the judgment of sentence. Justice COHEN concurred in the result, Justice EAGEN wrote a dissenting opinion in which Chief Justice, then Justice JONES and the writer joined.

[2] Post Conviction Hearing Act, Act of January 24, 1966, P. L. (1965) 1580, §§1 et seq., 19 P.S. §§1180-1 et seq. (Supp. 1970).

[3] While in certain very exceptional circumstances the introduction of an involuntary confession may be harmless error, see *Milton v. Wainwright,* 407 U.S. 371, 92 S. Ct. 2174 (1972), that defi-

The Commonwealth does not dispute the fact that during the police custodial interrogation prior to his confession appellant was not told explicitly of his right to remain silent.[4] We have held on numerous occasions that such a warning is required after the decisional date of *Escobedo v. Illinois,* supra.[5] *Commonwealth v. Campbell,* 442 Pa. 313, 275 A. 2d 64 (1971); *Commonwealth v. Banks,* 429 Pa. 53, 239 A. 2d 416 (1968); *Commonwealth v. Walker,* 428 Pa. 244, 236 A. 2d 765 (1968); *Commonwealth v. Vivian,* 426 Pa. 192, 231 A. 2d 301 (1967); *Commonwealth v. Medina,* 424 Pa. 632, 227 A. 2d 842 (1967); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765 (1967); *Commonwealth v. Hardy,* 423 Pa. 208, 223 A. 2d 719 (1966). Rather the Commonwealth contends that the issue is foreclosed to appellant because of this Court's earlier decision in *Commonwealth v. Smith,* supra. We cannot agree.

___

nitely is not the case here. The Commonwealth's case against appellant, except for the confession, was based entirely on circumstantial evidence. We cannot find on this record that the introduction of the involuntary confession was harmless error. *Harrington v. California,* 395 U.S. 250, 89 S. Ct. 1726 (1969); *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967); *Commonwealth v. Padgett,* 428 Pa. 229, 237 A. 2d 209 (1968); *Commonwealth v. Pearson,* 427 Pa. 45, 233 A. 2d 552 (1967); cf. *Commonwealth v. Vivian,* 426 Pa. 192, 196 n.2, 231 A. 2d 301, 303 n.2 (1967).

[4] The record discloses that the following information was given appellant by the police before his confession: "Q. [Police Officer] William, are you willing to give a voluntary statement about this assault knowing that the statement will be used in court if this case should come to trial and also knowing that you have the right to counsel? A. [Appellant] Yes. Q. William, do you understand that you are not compelled to make a statement without consulting an attorney? A. Yes. Q. Are you willing to make a statement without consulting an attorney? A. Yes."

[5] *Escobedo v. Illinois* was decided on June 22, 1964, two months before appellant's confession on August 28, 1964.

Although this Court had several early opportunities to consider the Sixth Amendment foundations of *Escobedo v. Illinois*,[6] the first opinion of this Court to fully consider the Fifth Amendment requirements of *Escobedo v. Illinois* was *Commonwealth v. Hardy*, 423 Pa. 208, 223 A. 2d 719 (1966). In *Commonwealth v. Hardy*, supra, Chief Justice, then Justice JONES, speaking for a unanimous Court, held that a confession is violative of *Escobedo v. Illinois* where the defendant "is not effectively warned of his constitutional right to remain silent." Id. at 214, 223 A. 2d at 722.

Shortly thereafter, and still preceding this Court's decision in *Commonwealth v. Smith*, supra, we granted relief to a defendant who was "not advised of her right to remain silent" noting that "under the teaching of Escobedo" the absence of such a warning "precluded evidentiary use of the statements made." *Commonwealth v. Jefferson*, 423 Pa. 541, 544, 226 A. 2d 765, 767 (1967) (Justice EAGEN). In determining that *Escobedo v. Illinois* compelled such a warning this Court observed that in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), the United States Supreme Court made the following explanation of *Escobedo v. Illinois*: " 'Our holding there stressed the fact that the police had not advised the defendant of his constitutional privilege to remain silent at the outset of the interro-

---

[6] Compare *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964) (confession involuntary only where defendant requests and was denied counsel and defendant not informed of his right to remain silent) with *Commonwealth v. Negri*, 419 Pa. 117, 213 A. 2d 670 (1965) (*Commonwealth v. Coyle*, supra, overruled—defendant entitled to relief even without a request for counsel) *Commonwealth v. Negri*, supra, was in turn overruled in *Commonwealth v. Schmidt*, 423 Pa. 432, 224 A. 2d 625 (1966) (defendant not unconstitutionally deprived of assistance of counsel unless he requests such assistance and is not effectively warned of his right to remain silent).

gation, and we drew attention to that fact at several points in the decision. . . . This was no isolated factor, but an essential ingredient in our decision.' " Id. at 544, 226 A. 2d at 767 (quoting from *Miranda v. Arizona,* 384 U.S. at 465, 86 S. Ct. at 1623).[7]

*Commonwealth v. Smith,* supra, stands as a temporary rejection of the view expressed in *Commonwealth v. Jefferson,* supra, and *Commonwealth v. Hardy,* supra. Appellant was never warned of his right to remain silent[8] and the majority of the Court did not purport to make such a finding. Nevertheless, without mention of *Escobedo v. Illinois, Commonwealth v. Jefferson,* supra, or *Commonwealth v. Hardy,* supra, the Court denied relief and thus implicitly held that such a warning was no longer required.

The disposition reached by this Court in *Commonwealth v. Smith,* supra, a marked departure from our earlier decisional law, was not to be followed. In every case subsequent to *Commonwealth v. Smith,* supra, this Court has firmly held that a defendant interrogated after the decisional date of *Escobedo v. Illinois,* supra, must be informed of his right to remain silent. *Commonwealth v. Campbell,* supra; *Commonwealth v. Banks,* supra; *Commonwealth v. Walker,* supra; *Com-*

---

[7] See also *Johnson v. New Jersey,* 384 U.S. 719, 733-34, 86 S. Ct. 1772, 1781 (1966) : "[T]he precise holding of Escobedo was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent. . . .' " (Citation omitted).

[8] See note 4, supra.

monwealth v. Vivian, supra; Commonwealth v. Medina, supra. After reviewing the relevant case law and concluding that after Escobedo v. Illinois, supra, a defendant must be informed of his right to remain silent, this Court in Commonwealth v. Campbell, supra, made emphatic our rejection of the holding of Commonwealth v. Smith, supra: "Anything to the contrary in Commonwealth v. Smith, 424 Pa. 9, 225 A. 2d 691 (1967), is disapproved." Id. at 317, n.2, 275 A. 2d at 66 n.2.

This Court has observed that an issue is not finally litigated for the purposes of the Post Conviction Hearing Act if there has been a change of law that applies to the date of defendant's conviction. Commonwealth v. Cornitcher, 447 Pa. 539, 544-45 n.5, 291 A. 2d 521, 524 n.5 (1972); Commonwealth v. Gates, 429 Pa. 453, 457, 240 A. 2d 815, 817 (1968); see also Commonwealth v. Bonaparte, 210 Pa. Superior Ct. 93, 95, 232 A. 2d 12, 13 (1967); PCHA §3(12), 19 P.S. §1180-3(12) (Supp. 1971). In the instant case this Court has determined, both prior and subsequent to the date of appellant's direct appeal, that Escobedo v. Illinois requires as a constitutional minimum that a defendant in custody be expressly informed of his right to remain silent. See Commonwealth v. Campbell, supra, and cases cited therein. We have no hesitancy in holding that this interpretation of Escobedo v. Illinois, supra, which is mandated by the direct language of that decision itself and buttressed by subsequent United States Supreme Court cases discussing Escobedo v. Illinois,[9] is applicable to the date of defendant's conviction.[10] We thus

---

[9] See footnote 7 and accompanying text.

[10] See, e.g., Commonwealth v. Stevens, 429 Pa. 593, 240 A. 2d 536 (1968), and Commonwealth ex rel. Berkery v. Myers, 429 Pa. 378, 239 A. 2d 805 (1968). In both these cases this Court concluded upon direct review that tacit admissions were properly admitted and affirmed the judgments of sentence. Upon review of each de-

hold that in light of the conceded failure of the police to expressly inform appellant of his right to remain silent, appellant is entitled to a new trial.

The order of the trial court denying post-conviction relief is reversed. The judgment of sentence is reversed and appellant is awarded a new trial.

Mr. Justice EAGEN concurs in the result.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The majority, in awarding a new trial to this appellant whose judgment of sentence as a convicted murderer we have previously affirmed, overlooks important dates and reaches a result which is neither authorized by our legislature nor required by the federal constitution. I must respectfully dissent.

The background facts bearing on the legal issue may be briefly stated: In the early morning of August 28, 1964, Mary Louise Green was found in a mutilated and dying condition in a vacant lot of the city of York. That same day William Smith, Jr., the appellant here, was questioned by police and confessed that he had assaulted the girl. His statement was reduced to writing and began as follows: "Following is the voluntary statement of William (NMN) Smith Jr. age 28 yrs of 333 E. King St. York, Pa. This statement is in reference to the assault reported on Louise Mary Green of 138 E. Newton St. This assault occurred on the College Campus Playground located at the old Y.J.C. Building at College and Duke Sts." The confession then followed in question and answer form, preceded by the dialogue set forth in footnote 4 of the majority opinion, which for convenience is reproduced here: "Q.

———

fendant's collateral attack, we concluded, following the Third Circuit's opinion in *United States ex rel. Staino v. Brierly*, 387 F. 2d 597 (3d Cir. 1967), that introduction of the tacit admissions was constitutionally impermissible, and thus awarded a new trial.

William, are you willing to give a voluntary statement about this assault, knowing that this statement will be used in Court if this case should come to trial and also knowing that you have right to counsel? A. Yes. Q. William do you understand that you are entitled to an Attorney? A. Yes. Q. William you do understand that you are not compelled to make a statement without consulting an Attorney? A. Yes. Q. Are you willing to make a statement without consulting an Attorney? A. Yes." After relating the events surrounding the fatal assault, Smith then read and signed the following: "I have made this statement of my own free will and accord, without any threats being made to me or any force used. I have not had any promises made to me and I have also been advised that if this case should go to court it may be used against me as evidence. After reading this statement and finding the facts as I have stated them I am willing to sign the same." William Smith, Jr. was convicted of second degree murder and sentenced to a term of 10 to 20 years imprisonment. He appealed that judgment of sentence to this Court directly, arguing that the above statement was obtained through violation of his constitutional rights. We did not agree, and affirmed the judgment. *Commonwealth v. Smith,* 424 Pa. 9, 225 A. 2d 691 (1967).

Smith has now filed a petition under the PCHA, raising exactly the issue decided on his direct appeal. The majority concludes that the law under *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977 (1964), as interpreted by this Court has changed since the date of our decision in Smith's direct appeal, and that, therefore, the issue has not been "finally litigated" within the meaning of section 4 of the PCHA, 19 P.S. §1180-4 (Supp. 1972-73). I find this conclusion insupportable.

To demonstrate that the law has changed subsequent to our decision in *Smith,* supra, the Court cites (page

314 of the majority opinion) the case of *Commonwealth v. Campbell,* 442 Pa. 313, 275 A. 2d 64 (1971), "and cases cited therein." An examination of *Campbell,* however, reveals that no new principle was there announced; rather the Court in that case relied on a line of our decisions beginning with *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765 (1967),[1] which announced an unconditional requirement that a suspect in custody of the police be warned of his right to remain silent. The decision in *Jefferson* was filed on January 4, 1967. The decision in *Smith*—the direct appeal by the present appellant raising the issue now before us—was handed down on January 20, 1967. Considering the proximity of these dates, it is difficult to believe that the Court in *Smith* was unaware of the holding in *Jefferson.* Indeed, it is apparent that the majority[2] in *Smith* knew of that holding and the possible presence of the issue in the case. Mr. Justice EAGEN, the author of *Jefferson,* took pains to point out that *Smith* was being decided contrary to that very recent controlling authority. *Commonwealth v. Smith,* 424 Pa. at 15 (EAGEN, J., dissenting).

Without indulging in speculation as to why the majority in *Smith* did not mention either *Escobedo* or *Jefferson,* it cannot be controverted that the rule of sub-

---

[1] See *Commonwealth v. Campbell,* 442 Pa. 313, 316, 275 A. 2d 64 (1971): "Since this trial commenced subsequent to June 22, 1964 and prior to June 13, 1966, the controlling rules are those set forth in Escobedo v. Illinois, supra, rather than Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). See Johnson v. New Jersey, 384 U.S. 719, 86 S. Ct. 1772 (1966); Davis v. North Carolina, 384 U.S. 737, 86 S. Ct. 1761 (1966); Commonwealth v. Banks, 429 Pa. 53, 239 A. 2d 416 (1968); Commonwealth v. Vivian, 426 Pa. 192 231 A. 2d 301 (1967); Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765 (1967)."

[2] The majority opinion in *Smith* was written by Mr. Justice MUSMANNO, and joined by Chief Justice BELL and Justice O'BRIEN. Justice COHEN concurred in the result.

stantive law upon which the majority now relies was in existence at the time of appellant's direct appeal and, for whatever reason, was not followed by the majority of the Court. It cannot be said that the *Smith* decision was intended to overrule *Jefferson*; it does not mention it. When next the question arose in *Commonwealth v. Medina*, 424 Pa. 632, 227 A. 2d 842 (1967) (unanimous decision filed March 21, 1967), the Court cited *Jefferson* as controlling without even mentioning *Smith*. The law has thus remained constant from *Jefferson* to *Campbell*, supra; all that can be said about *Commonwealth v. Smith* is that it was incorrectly decided in light of the then existing authority.

The question then becomes one of determining whether the General Assembly has authorized us within the confines of the Post Conviction Hearing Act to correct a decision which was incorrect *at the date it was rendered.*

Under section 3 of the PCHA, 19 P.S. §1180-3 (Supp. 1972-73), appellant must allege and prove that the constitutional issue he asserts has not been finally litigated or waived. An issue is finally litigated if "The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue." 19 P.S. §1180-4(a)(3). The majority attempts to avoid the force of this language by reference to 19 P.S. §1180-3 (c)(12), which would provide relief on collateral attack for "abridgement . . . of . . . a right that was not recognized as existing at the time of trial if the constitution requires retrospective application of that right." We have always in the past interpreted this language and the "finally litigated or waived" provisions as permitting a PCHA petitioner to take advantage of constitutional rights subsequently announced and held to be retroactively applicable. *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A. 2d 793 (1968); *Common-*

wealth v. Richardson, 433 Pa. 195, 249 A. 2d 307 (1969). Cf. Commonwealth v. Faison, 437 Pa. 432, 264 A. 2d 394 (1970). To do otherwise would be to undermine the raison d'etre of the PCHA.

This case, however, presents quite a different question altogether. At issue is not the discovery subsequent to Smith's direct appeal to this Court of a then unknown constitutional right, as was the case in Cheeks and Richardson, supra. To the contrary, the right in issue was announced in 1964 and interpreted as Smith would now have us interpret it in January, 1967, prior to the decision on his direct appeal. The "finally litigated" question must therefore be addressed without reference to 19 P.S. §1180-3(c) (12)—rights not in existence on the date of prior litigation—and without reference to our case law interpreting that provision.

The General Assembly has commanded us not to entertain issues under the PCHA which we have previously decided on the merits unless the law has subsequently changed and must be retroactively applied, an exception not relevant in this case. I cannot believe that the legislature intended the phrase "ruled on the merits of the issue" to be interpreted "ruled on the merits of the issue correctly in light of the then existing law." All litigation must at some point reach an end, even in this area of collateral attack on criminal convictions in which finality is often difficult to achieve. That point must be reached, in the absence of the subsequent pronouncement of a new constitutional principle, when this Court has considered the issue on the merits in the light of principles that have not since changed and has been ruled, correctly or incorrectly. We are not authorized by the legislature to utilize the PCHA petition as a means of correcting decisions because now believed to have been erroneous at the time they were announced.

The precise issue was very recently considered in *Commonwealth v. Simon*, 446 Pa. 215, 218, 285 A. 2d 861 (1971) (ROBERTS, J.): "Cheeks and its progeny merely established the rule that failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding." In an earlier decision, *Commonwealth v. Gates*, 429 Pa. 453, 457, 240 A. 2d 815 (1968), the same point had been elaborated, Mr. Justice ROBERTS again speaking for the court: "Appellant's next three contentions are governed in their resolution by §4 of the Post Conviction Hearing Act which recites that an issue is deemed finally litigated if the Supreme Court has ruled on its merits and there have been no retroactive changes in the applicable law. When appellant last came before us on direct appeal, he alleged that perjured testimony was used at trial, that the judge erroneously denied him the right to cross-examine certain Commonwealth witnesses, and that the verdict was against the weight of the evidence. On all these grounds his appeal was unsuccessful . . . These issues having been once faced by our Court, they can no longer form the basis for collateral relief." See also *Commonwealth v. Isenberg*, 440 Pa. 541, 271 A. 2d 215 (1970). I therefore conclude that we are without power under the PCHA to correct our earlier decision made on direct appeal.[3]

---

[3] We may, nonetheless, have power to correct the earlier decision in direct appeal by considering appellant's petition as one for a writ of coram nobis. See *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A. 2d 465 (1971), where we held that a petitioner unable to utilize the PCHA because not a person incarcerated, on parole, or on probation could avail himself of a writ of coram nobis. Assuming the existence of such a power in this case, I am of the opinion that the Court should not exercise it for reasons which follow in the text after this note.

While not directly bearing on this dissent, it is worth noting that were the Court otherwise disposed, and agreed that we are without power to act in this situation, Smith would fare no better in the federal courts. As one who would have exhausted his state remedies, he could, of course, seek redress in the federal system for an alleged violation of his constitutional right. The rule in the Third Circuit, however, is that absent a request for the presence of counsel, no rights inure to the suspect under *Escobedo. Billingsley v. New Jersey*, 408 F. 2d 1181 (1969), overruling *United States ex rel. Russo v. New Jersey*, 351 F. 2d 429 (3d Cir. 1965).[4]

It would thus appear that the majority today grants a new trial on facts which would not prove the violation of any federally guaranteed rights and in disregard of a legislatively imposed limitation which, given the reading that we have on prior occasions afforded, would prevent our even reaching the merits of this already litigated issue. I would affirm the order of the Court below dismissing the petition for post-conviction relief.

Mr. Chief Justice JONES joins in this dissenting opinion.

---

[4] The reason for the position of the Third Circuit on this issue is that the contrary interpretation of *Escobedo*, represented by Pennsylvania decisions starting with *Commonwealth v. Jefferson*, are at variance with the prevailing view. Compare *Commonwealth v. Jefferson*, supra, with *United States v. Feinberg*, 383 F. 2d 60 (2d Cir. 1967) (FRIENDLY, J.), cert. denied, 389 U.S. 1044, 19 L. Ed. 2d 836 (1968). The *Jefferson* line of cases is out of line as well with what we had once definitively announced as the interpretation of *Escobedo* in Pennsylvania following the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966) and *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882 (1966). Compare *Commonwealth v. Jefferson*, supra, with *Commonwealth v. Schmidt*, 423 Pa. 432, 224 A. 2d 625 (1966).