## WILLIAM KILLER v. COMMONWEALTH.

### ERROR TO THE COURT OF OYER AND TERMINER OF PHILADELPHIA COUNTY.

Argued January 21, 1889—Decided January 28, 1889.

On the trial of an indictment for murder, it was shown clearly that the deceased was found lying as if asleep in his bed, with his skull crushed in by a blow from some blunt instrument, his person covered with a blanket to his neck, his hands beneath the blanket and blood stained, and that a heavy iron sash-weight, also blood stained, was lying at his shoulders: in such case, the ingredients necessary to constitute murder in the first degree were proved to exist.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 113 July Term 1888, Sup. Ct.; court below, No. 241 January Term 1888, O. and T.

### Charge of Court below.

On January 11, 1888, the grand jury returned as a true bill an indictment charging William Killer with the murder of David Lewis. The defendant, being arraigned, pleaded not guilty.

At the trial February 28, 1888, before FINLETTER, P. J., the undisputed evidence showed that on Sunday morning, November 6, 1887, David Lewis was found dead, upon the upper floor of a stable at No. 447, North Eighth street, Philadelphia. He lay upon a pile of robes, and one blanket covered all his person save his head. His hands, which were under a blanket when he was found, were stained on the inside with blood. There were several crushing wounds upon his head, and across his feet lay a blood stained stick of wood which had come off a bale of hay, and a heavy iron sash-weight, also stained with blood lay at his shoulder.

The deceased was employed about the stable as a wagon-washer. The prisoner had also been so employed there a month or so before the homicide, still slept in the stable at night, and the night of the homicide stayed in the same room where the deceased slept, a room perhaps sixty feet square. When he was arrested the morning after the homicide, the prisoner gave contradictory accounts of himself during the night, whether he had slept in the hay-mow, or in a furniture wagon in the large room. The valise and two vests of the deceased were found empty, with blood stains on them : he had been paid some money the day before, and both his money and his watch were missing. No ill-feeling was shown to have existed between the prisoner and the deceased, nor was the conduct of the prisoner, who remained about the stable, in any way suspicious, but upon his clothes were found fresh blood-stains identified by experts called as of human blood.

Upon evidence of the foregoing and other facts, the court, FINLETTER, P. J., after explaining the principles of the law of murder in the statutory degrees, charged the jury :

The proof of the intention to kill, and the disposition of mind constituting murder of the first degree, lies upon the commonwealth. But this proof need not be expressed or positive. It may be inferred from the circumstances.

He who uses upon the body of another, at some vital point,

with a manifest intention to use it upon him, a deadly weapon, must, in the absence of qualifying facts, be presumed to know his blow is likely to kill, and must be presumed to intend the death which is the probable consequence of such an act. He who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly and from a bad heart. Therefore, he who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate and fully form the conscious purpose of killing, and without any sufficient reason or cause of extenuation, is guilty of murder of the first degree.

All murder not of the first degree is necessarily of the second degree, and includes all unlawful killing under circumstances of depravity of heart and a disposition of mind regardless of social duty, but where no intention to kill existed or can be reasonably and fully inferred. Therefore, in all cases of murder, if no intention to kill can be inferred from the circumstances, the verdict must be murder in the second degree.

Manslaughter is the unlawful killing of another, without malice, in sudden heat. To reduce an intentional blow resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool. If there be provocation without passion, or passion without sufficient cause of provocation, or if there be time to cool and reason has resumed its sway, the killing will be murder. All homicide is presumed to be malicious, that is, murder of some degree, until the contrary appears in evidence. But though the homicide is thus presumed to be murder, it is not presumed to be murder of the first degree. The presumption rises no higher than murder in the second degree, until it is shown by the commonwealth to be murder in the first degree.

It, therefore, lies upon the commonwealth to satisfy the jury of those facts and circumstances which indicate the deliberate intention to kill, and the cool depravity of heart and conscious purpose which constitute the crime of murder in the first degree. The nature of the weapon and the place and character of the wounds are important to be considered. The deadliness of the weapon tends to indicate the intention with which it is used. The place where the blows are struck also

throws light on the intention. If used upon a vital part of the body they may indicate an intention to kill.

I have thus given you the principles of law arising out of the charge of the commonwealth against the prisoner.

\* \* \* \* \* \* \* \*

I now ask your attention to the evidence of the case:

Upon the 6th day of November last, about 7:30 o'clock, David Lewis was found dead in his bed. He lay as if in sleep, his person covered to the neck with a blanket. Upon his head were found wounds which Dr. Formad has said were sufficient to produce death, and which did produce his death. At his shoulder was found the iron sash-weight, and upon the blanket at his knee the stick which has been given in evidence. Upon both of these instruments there was blood. There was blood upon his head and upon the inside of his hands, and upon the bed clothing, which was stiff and dry. There was no disturbance of the bed and clothing; no indication of a struggle therein or near it. His arms were covered by the blankets. Not far from where he lay, two vests and a valise were found, which were stained with what appeared to be blood. These facts have been testified to, and it is for the jury to say how far they are reliable, and how far they are connected with the death of David Lewis.

If they are connected with the death, it is for the jury to draw their own conclusions from them. They may throw light upon the cause of death, the means used, the intent with which the means were used, and the purpose and object of the slayer.

Was David Lewis' death caused by violence? Dr. Formad has testified that it was.

What were the instruments used? Where were the marks of violence upon his body? Did the surroundings indicate a conflict or struggle? Was he slain, and what was the purpose or object?

These are important questions, which the jury must solve from the evidence. There is no evidence that he had an enemy or quarrel with any one, from which it might be inferred that his death was the result of a revengeful spirit.

The jury must look for the object and purpose in the circumstances of the case, as evinced by the evidence. If the

jury are satisfied from the evidence that this was a death from wilful violence, then it becomes their duty to ascertain the nature and character of the homicide.

If there is no evidence of a conflict, it is not manslaughter. If there is evidence of an intention to kill, it is not murder of the second degree. If there is evidence of a wilful, deliberate, premeditated killing, it is murder of the first degree. If he was killed while he slept, could the homicide be anything else than a wilful, deliberate, premeditated killing, which is murder of the first degree? If the sash-weight and stick were used to inflict the blows upon the head, could there be anything but an intent to kill? Were they deadly weapons, and were they used to inflict violence upon a vital part of the body? If they were, the intention to kill is established, if there was time for deliberation and premeditation. A wilful act without provocation must be deliberate and premeditated. It is for the jury to say what the use of two different weapons indicate, when they come to consider the question of premeditation and deliberation.

If the jury come to the conclusion that David Lewis' death was one of intentional violence, without justification, then the question arises, Who caused his death?

\*    \*    \*    \*    \*    \*    \*    \*

The jury returned a verdict that the prisoner was guilty of murder in the first degree, in manner and form as he stood indicted.

On May 12, 1888, a rule for a new trial having been discharged, judgment of execution was passed, when the prisoner took this writ, assigning as error, inter alia, under § 2, act of February 15, 1870, P. L. 15, that

1. The evidence in this case does not prove the existence of the ingredients necessary to constitute murder in the first degree.

*Mr. E. Clinton Rhoads*, for the plaintiff in error:

1. Proof of the intention to kill and of the disposition of mind constituting murder in the first degree, under the act of assembly, lies on the commonwealth: Commonwealth v. Drum, 58 Pa. 16; Lanahan v. Commonwealth, 84 Pa. 87. "I do not doubt the correctness of the position that malice may be infer-

red from the use of an instrument likely to kill. But without more than this, it would be murder in the second degree. It will not do to substitute the catastrophe alone for the crime of the highest grade, in which is required as an essential the deliberate purpose, and, if we would avoid this, we must be careful not to apply tests indicative of one grade, as guiding us to correct conclusions in another. More is necessary than a blow with an instrument likely to kill, to constitute murder of the first degree. There must be intention, deliberation and premeditation found, and the instrument is evidence on this point. If this do not appear, the use of an instrument in a sudden quarrel, although likely to kill, and killing ensues, leaves the grade of the crime of the second degree:" Kelly v. Commonwealth, 1 Gr. 484, 492; Keenan v. Commonwealth, 44 Pa. 55.

2. Much confusion results from importing into the discussion of murder in the first degree, the principles of the common law relating to murder. The actual intent with which a fatal and unlawful blow was given, was no more a consideration in the common law, than the intent of the man who unlawfully took a bushel of potatoes. The requisite of a murderous blow was, that it should be given with malice aforethought. It is to murder at the common law, and to the "malice" contained in its definition, that the presumption of malice from the use of a deadly weapon arises. "The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw:" Commonwealth v. Pierce, 138 Mass. 165; State v. Turner, Wright (Ohio), 20; People v. Williams, 73 Cal. 531; People v. Dogell, 48 Cal. 85; Stokes v. People, 53 N. Y. 164 (13 Amer. R. 492); People v. Knapp, 71 Cal. 6; Harris v. State, 8 Tex. 90; Onofri v. Commonwealth, 20 W. N. 264; McCue v. Commonwealth, 78 Pa. 185; Murray v. Commonwealth, 79 Pa. 316; Commonwealth v. Drum, 58 Pa. 18; Lynch v. Commonwealth, 77 Pa. 210; Jones v. Commonwealth, 75⁶ Pa. 403; O'Mara v. Commonwealth, 75 Pa. 424; Tiffany v. Commonwealth, 121 Pa. 165; Johnson v. Commonwealth, 24 Pa. 389.

3. "Such use of a deadly weapon is evidence of malice, and may be an essential ingredient in the proof of murder in many

cases, but it does not follow that every homicide committed by the use of a deadly weapon, and not in necessary self-defence, is murder:" Donnellan v. Commonwealth, 7 Bush. 679; Smith v. Commonwealth, 1 Duval 226; Clew v. State, 31 Ind. 484. In the present case, the evidence completely failed to show that the killing was done in the perpetration of a robbery; that the prisoner knew that the deceased had received any money, and no part of the deceased's property was traced to the prisoner. It is submitted that, under the burden of proof established by law for cases of murder in the first degree, the prisoner, especially in cases of merely circumstantial evidence, is entitled to have proved some of the circumstances of the crime, at least, and that presumptions cannot satisfy the degree of proof necessary for murder in the first degree: Commonwealth v. Drum, 58 Pa. 9.

*Mr. George S. Graham, District Attorney,* for the defendant in error:

As was said in McManus v. Commonwealth, 91 Pa. 66, "The evidence comes here, not for the purpose of reviewing the facts, but to enable the court to ascertain whether the elements of murder in the first degree exist so as to warrant as matter of law such a verdict." "We are not, however, to assume all the functions of jurors, and pass on the credibility of witnesses, nor on the apparent weight of the evidence:" McGinnis v. Commonwealth, 102 Pa. 71. The circumstances and surroundings, in evidence, are sufficient to convince any one that whoever murdered this dead man did so with deliberate intent to kill and with cool depravity of heart and conscious purpose, thus constituting the crime one of murder in the first degree.

PER CURIAM:

We are asked by the first assignment of error to say that " the evidence in this case does not prove the existence of the ingredients necessary to constitute murder in the first degree." This we cannot do. The evidence pointed clearly to a wilful, deliberate, and brutal murder. The deceased was found in his bed, with his skull crushed in by a blow from some blunt instrument. The heavy iron sash-weight with which it was

probably done was lying, covered partly with blood, by his shoulder. His person was covered with a blanket to his neck. When found he was lying as if in sleep. There had been no struggle. One single, crushing blow with the heavy iron weight, whilst sleeping, had evidently ended his life. To say that such an instrument, when so used, is not a deadly weapon, evidencing an intent to take life, is a proposition that does not require discussion.

The other assignments were not pressed, and are without merit.

> The judgment is affirmed, and it is ordered that the record be remitted to the Oyer and Terminer for the purpose of execution.