LOTTINGER, Judge.
1 This is a tort action wherein the plaintiff seeks to recover the sum of $17,764 as damages ■ sustained by him as the result of an assault' ^and " battery committed on him by the defendant! It is alleged that the assault arid battery occurred on February 19, 1951, at about 5:45 P. M. when the defendant shot the plaintiff in the back with a pistol. The ■ defendant in his answer admits the shooting but pleads justification on the grounds that he acted in self defense. ■ ■ .
After trial on the merits in the lower court, judgment was rendered in favor of the plaintiff awarding him the sum of $2,000, and the case is now before us on an appeal taken by the defendant. The plaintiff, in his brief, asks that the judgment appealed from be increased 'to the amount originally prayed for. . However, the plaintiff has neither appealed nor answered the appeal and consequently it is clear at the outset that even were we to find him entitled to a larger amount, we would be powerless to so alter the judgment.
The unfortunate occurrence giving rise to this litigation occurred in a small community known as Big Brands in St. Tammany Parish where the defendant operated a restaurant. The testimony shows that on the date of the shooting, the plaintiff’s minor daughter had been sent by her moth! er to the store of a Mr. Allison which was situated across the street from the defendant’s place of business. After leaving the store the child crossed the street followed by two dogs and as she passed in front of the defendant’s restaurant a shot was fired by him. According to the child this shot was fired at one of the dogs which was following her. The defendant admitted firing the shot but stated that he did not shoot in the direction of the child but rather shot into the ground on his own premises to frighten a dog which had molested his child. The plaintiff’s daughter stated further that when the shot was fired she was struck on the leg by some flying object. Whether this object was a piece of gravel from which the bullet may have recocheted or something else is not conclusively shown by the record. The trial judge, in his written reason for judgment, however, con- *877 eluded that the defendant had fired at the dog following the plaintiff’s child and, further, that she had been hit on the leg by a rock which had been struck by the bullet. Be that as it may, the record shows clearly that after the firing of the shot, the child became hysterical and ran directly home to her mother.
The plaintiff’s home is situated only a short distance from the defendant’s restaurant, and as soon as his daughter returned, her mother took her and one of the dogs, which belonged to a Mrs. Peterson, to the home of a neighbor, a Mrs. Masters, for the purpose of tying it up. Almost immediately "after their arrival at the Masters home, the plaintiff and Mr. Masters arrived, having returned home from their work in New Orleans. At this time, Mrs. Reber, the minor daughter -Dianne, and Mrs. Masters were all standing in front of the Masters home with Dianne still crying. Upon being informed by his wife of what had happened the plaintiff immediately set out for the defendant’s place of business for the avowed purpose of questioning him about the shooting.
The crux of the case is, of course, what transpired after the plaintiff arrived at the defendant’s restaurant and, needless to say, their testimony on this point is conflicting. It is clear, however, that the plaintiff walked into the restaurant, informed the defendant that he had shot at a dog and that in so doing had almost shot his daughter. This occurred in the presence of defendant, his wife and two customers, a Mrs. Ber-geron and a Mrs. Courcier. The testimony of these latter ladies is of little assistance, for after hearing the plaintiff’s initial statement, they both sensed an argument and departed. -
According to the plaintiff, the defendant became incensed as soon as the matter was mentioned, denied having shot in the child’s direction and ordered the plaintiff to leave. This of course, happened inside the restaurant, and the plaintiff testified that when ordered to do so, he began to retreat by backing toward the door. When he was out of the building he stated that the defendant “made a pass at him” whereupon he grabbed him and shoved him against the building. . After shoving the defendant, the' plaintiff stated that he turned to leave and after having walked a distance of some 15 or 20 feet in the direction of his wife and child, the defendant shot him in the back, the bullet entering in the vicinity of the left shoulder blade. This testimony, (i. e., with regard to what happened outside the building) is substantially corroborated by that of Mrs. Reber, Mr. Masters and-the plaintiff’s minor daughter, Violet, none of whom were over 90 feet .away.
The defendant and his wife both stated that not only did the plaintiff question the defendant about the shooting but threatened to kill him for having done so. They stated further that the plaintiff refused to leave when ordered the first time and did not begin to leave until the defendant came from behind the bar or counter and ordered him a second time. The defendants stated that as they approached the door, the plaintiff struck him on the ear. According to his wife, however, no blows appear to have been exchanged until both had emerged from the building. They both testified that as soon as defendant got outside the plaintiff jumped on him and struck him some six or seven times. According to the defendant, he backed away, finally succeeded in pulling his gun from his trouser pocket and as plaintiff swung with his left hand, he dodged the blow causing the plaintiff’s body to turn. Simultaneous with the turning by the plaintiff, the defendant pulled the trigger and the bullet entered his back.
Two other witnesses testified on behalf of the. defendant. One.of these was a Mr. Levison, a salesman who saw the defendant after the encounter, and who testified that he could still tell he had been “in a scrape”. Dr. H. E. Geautreaux saw the defendant the morning after the incident and stated that he had contusions on his face and chest. Neither of these gentlemen, of course, could state definitely what or who had caused the bruises although Dr. Geau-treaux stated that they could have been caused by a human fist.
The trial judge has favored us with a well reasoned opinion, wherein he held, in part as follows:
*878 “ * * * The defendant contends that even though he shot the plaintiff, the latter provoked the difficulty and cannot, therefore, recover damages even though the act of the defendant in shooting the plaintiff was not justified under the law.. He cites in support of this legal proposition the cases of Vernon v. Bankston, 28 La.Ann. p. 710; Bankston v. Folks, 38 La.Ann. p. 267; Lide v. Parker, 6 La.App. 648; Landry v. Himel, La.App., 176 So. p. 627; Ashley v. Baggett, La.App., 53 So.2d p. 678; Hartfield v. Thomas, La.App., 45 So.2d p. 216.
“I think -it pertinent to point out, • however, in this connection that there are many cases in our Jurisprudence which hold that words alone, no matter how provoking, will not justify an assault. (See Harvey v. Harvey, 124 La. 595, 50 So. p. 592; Munday v. Landry, 51 La.Ann. 303, 25 So. 66, p. 67; Richardson v. Zuntz, 26 La.Ann. p. 313.)
“There is a further line of jurisprudence in this State to the effect the assault must not have gone beyond what was reasonably brought on by the provocative acts, and if more force is used than is necessary to repel the assault then it is unjustified: Oakes v. H. Weil Baking Company, 174 La. 770, 141 So. 456; and in American Jurisprudence Vol. 4 Sec. 39, p. 148, the following language is used:
“ ‘The right of self defense exists only so long as the danger exists; as soon as the assailant desists there can be no further need of defense, and if the person defending himself pursues his assailant after the latter has given up the attack, and inflicts injury on him, he 'is liable both civilly and. criminally. * * * ’
“(See also the case of Randall v. Ridgley, La.App., 185 So. 632, p. 633, wherein the Court quoted from American Jurisprudence Vol. 4,'Sec. 51, p. 153 as follows:
“ ‘A person defending himself from an attack becomes liable as an aggres--sor where, the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally. * * * ’
“In the light of the above jurisprudence it becomes necessary to ascertain if the plaintiff herein provoked the difficulty and if it could be said that he did, was the act of the defendant in shooting him so unjustified as to ' make him civilly liable herein ?
' “From the factual situation presented in the record, I am of the opinion that the plaintiff did not provoke this difficulty, and even if it could be said that he did, he had desisted and retreated from the encounter and gone a distance of some 15 or 20 feet in the direction of his wife and daughter when he was shot in the back by this .defendant, which to my mind at the time constituted excessive force being used by ■this defendant, thereby making him the aggressor and liable for the assault and battery.
“The record reflects that within ten or fifteen minutes after the defendant shot at the dog immediately behind the plaintiff’s child, the plaintiff had talked to the child who was crying and it was then that he went to the defendant’s place of business to caution him about shooting so close to his daughter. While it is true if the plaintiff had not gone to defendant’s place of business he would have never been shot, yet I do not think the law exacts of any man that he be a- coward in the presence of his family and neighbors, and not have the right to even question and caution one who had fired a pistol, the bullet from which almost struck the plaintiff’s daughter. Since I believe the defendant fired the shot as above outlined there was no reason for him to have become so incensed and so resentful simply as a result of this plaintiff questioning him about the’ occurrence. It must be remem-. bered when the plaintiff walked into the defendant’s .place of business the *879 defendant and his wife were standing behind the bar, the defendant having a pistol in his right trousers pocket, and there is no question that he became intensely incensed by the plaintiff calling his attention to the fact that the shot had been fired.
“I am further of the opinion from the testimony that the defendant ordered the plaintiff out of his place of business and the plaintiff started backing out immediately, and it was at this time that the defendant came from behind the bar and followed the plaintiff to the door outside of the premises, where the difficulty ensued. Had the defendant remained behind the bár this unfortunate incident would not have occurred.
“I cannot believe defendant’s testimony to the effect the plaintiff struck him inside of the building because in the first place it is- not corroborated by the defendant’s wife, and in the second place if a blow had been struck by the plaintiff inside the building, the tussle would have occurred inside instead of outside the building. I am convinced that this plaintiff was followed outside the building by the defendant and when the defendant reached him he made a pass at the plaintiff, just as testified to by the plaintiff, and corroborated by his wife and minor child Violet, and the witness Masters. I am of the further opinion the plaintiff grabbed the defendant when this pass was made and in the ensuing scuffle he did shove the defendant into the building and it is possible at the time he struck him, but as to this there is some doubt in my mind. I realize the witness Levison and Dr. Geautreaux testified as to some bruises being on the side of defendant’s face and on his chest, but there is a possibility these bruises could have been caused as a result of his having been shoved into the side of the building by the plaintiff, and there is a further possibility of self-infliction. It must be remembered that this defendant had shot the plaintiff and he certainly did not know whether or not he had killed him for the plaintiff was unconscious, and if defendant was hurt as badly as he claimed, it is strange that he did not visit the Doctor until the next day after the accident. From-this Doctor’s' testimony it is doubtful if the defendant needed medical attention and the purpose of the visit to the Doctor could easily have been for the purpose of having him testify later. I was impressed by the testimony of Mrs. Reber and her daughter, Violet and the witness Masters, and for this reason I am of the opinion 'that • the first display of physical force was resorted to by the defendant in attempting to strike the plaintiff when the parties were immediately in front of the building. It is certainly possible that the plaintiff could have struck the defendant in the ensuing scuffle, but even if he did he was not the aggressor in the difficulty.
' “If I should bé in’ error in analyzing the facts in this case and- it could be said the plaintiff actually provoked the difficulty he still would be entitled to recover for the reason that at the time he was shot he had desisted from the affray turning his back to- the defendant and walking a distance of some 15 or 20 feet toward the plaintiff’s wife and child at the time the defendant shot him in the back. Clearly at the timé of the firing of the shot the defendant was not acting in self-defense for the encounter had ceased, and under the law the defendant was the aggressor when the shot was fired. (See Oakes v. Weil Baking Company; Randall v. Ridgley, and citations from American- Jurisprudence Supra, as well as American Jurisprudence Vol. 4, Sec. 51', p. 153, reading as follows:
“ ‘A person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally. * * * >
“My reasons for reaching the ultimate conclusion that the defendant was *880 the aggressor when the shot was fired is based not only on the testimony of the plaintiff’s wife and his daughter and Mr. Masters, but also on the testimony of the defendant himself, which I 'find it impossible to accept. He testified when he got out of the building the plaintiff jumped on him and hit him six or seven times, and it was while he was being so hit around the chest by the plaintiff that he drew the gun from his pocket and shot the plaintiff, and that .the reason he hit him in the back was the plaintiff had missed a left-handed blow,- which turned his body partially -around. At another point, he testified he had backed up. some eight feet from the plaintiff and when plaintiff made the left-handed blow exposing his back was when he shot him. I cannot accept either one of these versions as given by the defendant: In the first place, if the plaintiff had been holding him by the chest and striking him with the defendant. trying to ward off the blows with his hands over his head as he testifiedj he could not have shot the plaintiff in the manner described. And in the second place, if the defendant had backed up eight feet for the purpose of getting his gun the plaintiff could not have been striking at him at that distance, for it is obvious he could not have reached him. So, accordingly, I am convinced that this shooting occurred after the scuffle had ceased, and at a time when the plaintiff’s back was turned to the defendant, and after he, the plaintiff, had walked some 15 or 20 feet toward his wife and child. The defendant at that time certainly knew that the plaintiff did not intend to harm him, and I am consequently of the opinion when he fired the shot he was wholly unjustified.
* * * * * *
■ “The evidence shows that the plaintiff remained in the hospital for a period of some five days and was off from his work for a period of approximately a month, which occasioned the loss of'his wages in the amount of $316.00; at the-expiration'of the month he returned to his work and has worked regularly thereafter. He testified he suffered some pain for a considerable period of time after he was shot. In the determination of an award of damages, cases of this character are in a class to themselves, and mental anguish . and pain must be taken into consideration as well as humiliation. Further, that this, even though there was not sufficient provocation to justify the assault whatever words were used or the circumstances surrounding the incident must be taken into consideration in mitigation of damages. Considering these factors and the diminished value of the dollar, I am of the opinion an award of $2,000.00 is ample compensation for the plaintiff herein.”
We have carefully examined the record and failed to find anything therein which would warrant a reversal of the above quoted findings.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed. ,
Judgment affirmed.