## Commonwealth v. Harris

*Terry Wochok*, for Commonwealth.

*Malcolm W. Berkowitz*, for appellant.

LATRONE, J., May 1, 1970.—Defendant, Roy Harris, was indicted by the grand jury of Philadelphia on bill of indictment No. 1946, April term, 1968, wherein he was charged with the crimes of assault and battery, aggravated assault and battery, and assault and battery with intent to murder. Defendant entered pleas of not guilty to all counts on said bill and waived trial by jury. Defendant was found guilty of all charges contained in bill of indictment no. 1946, April term, 1968.

Defendant filed and argued a motion for a new trial based on the following reasons: (1) The verdict was contrary to the evidence; (2) the verdict was contrary to the weight of the evidence; (3) the verdict was contrary to law; (4) the court erred in restricting defense counsel's cross-examination of wife-prosecutrix; (5) the verdict was erroneous as a matter of law since defendant was entitled to assert the defense of self-defense under the facts disclosed at trial;[1] (6) the court erred in refusing a new trial in the interests of justice;[1] (7) the court disregarded the reputation evidence presented by defendant.[1] Likewise, defendant filed and argued a motion in arrest of judgment on the ground that the evidence was insufficient to sustain the verdict of the trial court. After hearing and argument on these post-trial motions, the trial court entered an order denying said motions.

---

[1] Additional and supplemental reasons for new trial contained and stated in defendant's brief in support of motion for new trial which were not included in his original formal written motions which were filed.

Defendant was sentenced on each charge of which he was found guilty as follows: On the first count of assault and battery, sentence was suspended; on the second count of aggravated assault and battery, sentence was suspended; on the third count of assault and battery with intent to murder, defendant was sentenced to a term of imprisonment of 11½ to 23 months. The instant appeal followed from these judgments of sentence.

## FINDINGS OF FACT

Willie May Harris (Willie May), wife-prosecutrix, and Roy Harris (Roy), defendant, were the mutual protagonists of an attritional and unhappy marital relationship that had puzzlingly survived the daily wear and tear of 25 years of cohabitation. On October 2, 1967, at about 7 a.m., the uncontrollable emotions of Willie May and Roy catalyzed this marital friction into open warfare and carnage that occurred in the first floor apartment and basement of the duplex home in which they resided at 5112 Spruce Street, Philadelphia, Pa.

At this early hour, Roy was engaged in the chore of gathering up and carrying cartons of empty coke bottles to his car for the purpose of returning them prior to his reporting to work at the required time of 8 a.m. Roy attempted to make two trips to his car. During his first trip, which had its point of origin at the rear kitchen of the first floor, five-room apartment occupied by him and Willie May, Roy shoved Willie May, since she was blocking his path of travel through the apartment and out the front door. At the time, Willie May was standing at the foot of a bed found in the middle bedroom of said apartment combing her daughter's hair in preparation for school. Willie May ignored and failed to respond to this first shove. Willie

May continued to groom her child's hair at the same site, thereby once again blocking Roy's second trip from the rear kitchen in which he carried empty cartons of coke in each hand. Roy once again pushed and shoved Willie May in an attempt to clear his path. This time Willie May retaliated by shoving Roy, causing his eye glasses to fall to the floor along with the two empty coke cartons he was carrying. During Roy's two trips through the bedroom, he and Willie May exchanged verbal abuse which was a continuation of an argument they had had the day before. The sound of the thud of the eye glasses and empty coke bottles falling to the floor served as bugles of battle to Roy and Willie May.

Upon observing the sight of Roy bending over to pick up his eye glasses and the ominously useful coke bottles, Willie May immediately retreated from the bedroom to the rear kitchen where she armed herself with two paring knives which were six and eight inches long, respectively. Roy interpreted Willie May's dash to the kitchen as his own call to arms, and without waiting for her return to the bedroom, departed through an exit door in the same bedroom to the basement where he had slyly secreted a shotgun unknown to Willie May. Upon her return to the bedroom, Willie May observed the absence of Roy, and with the false assurance of his departure, placed her two knives on a dresser and resumed combing her daughter's hair. From her vantage point in the bedroom, Willie May could observe that the front exit door from the apartment was open, which led her to believe that Roy had departed for work. However, Willie May's beliefs respecting Roy's departure were quickly dispelled by her observation of the bedroom's open exit door leading to the basement.

Alarmed by the possibility of Roy's still being in the house, Willie May ferreted out Roy's .32 caliber revolver from a bedroom closet. Assured that Roy could not be armed with his revolver, Willie May ventured down the staircase leading to the basement for the purpose of seeking out and attacking Roy should he be there. On her trip to the basement, Willie May was carrying the two paring knives in one hand and Roy's revolver in the other. At the time, Roy's revolver was broken open with cartridge cylinder exposed and unloaded.

Upon entering the basement, Willie May called for Roy, observed that he apparently was not there, and walked to a laundry room found in the extreme rear. The door to the laundry room was closed. Upon opening the laundry door to take a look, Willie May observed the awesome sight of Roy with a shotgun in one hand and shotgun shells in the other. Willie May immediately dropped the knives and revolver she had in her hands, closed the laundry room door and started to run. Roy started in close pursuit with the loaded shotgun.

Willie May's swift gait of retreat traversed the length of the basement and permitted her to ascend halfway up the basement staircase where she was struck by a single blast from Roy's shotgun. The blast struck the back of both of Willie May's upper thighs in that area approximating the middle of her legs. The more serious wound to the left thigh went completely through it and measured three to four inches in diameter. The wound to the right thigh was less serious and measured 2 × 5 inches in size with no deep tissue involvement. As a consequence of these wounds, Willie May was hospitalized for 10 days and presently exhibits two large and ugly scars on the back of both thighs.

## I. The Sufficiency of the Evidence
## To Support the Verdicts

The standard to be applied to test the sufficiency of the evidence to support a conviction in a criminal proceeding has recently been reiterated by the Superior Court, speaking through Judge Hoffman, in Commonwealth v. Craft, 215 Pa. Superior Ct. 477, 478, 479, 258 A. 2d 537 (1969):

"It is axiomatic that the test of the sufficiency of the evidence is whether accepting as true all the evidence upon which the fact finder could properly have based its verdict, the evidence was sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crimes charged. Compare Commonwealth v. Tabb, 417 Pa. 13, 207 A. 2d 884 (1965), with Commonwealth v. Walker, 428 Pa. 244, 236 A. 2d 765 (1968); Commonwealth v. Crews, 429 Pa. 16, 239 A. 2d 350 (1968); Commonwealth v. Hazlett, 429 Pa. 476, 240 A. 2d 555 (1968). In reviewing the evidence, the Commonwealth is entitled to all reasonable inferences arising therefrom. Compare Commonwealth v. Tabb, supra, with Commonwealth v. Hazlett, supra; Commonwealth v. Zimmerman, 214 Pa. Superior Ct. 61, 251 A. 2d 819 (1969)."

See also Commonwealth v. DelMarmol et al., 215 Pa. Superior Ct. 484, 259 A. 2d 198 (1969); Commonwealth v. Zebrak, 216 Pa. Superior Ct. 33, 260 A. 2d 480 (1969).

Upon application of this standard to the evidence properly in the record, it is clearly shown that defendant was guilty of *all* charges contained in bill of indictment no. 1946, April term, 1968, beyond any suspicion, doubt or conjecture.

There can be no question that Roy's act in discharging a shotgun blast that fully pierced Willie May's left

thigh and damaged her right thigh constituted the crime of simple assault and battery.[2]

Likewise, the crime of aggravated assault and battery is clearly established by the evidence.[3]

In this case, the constituent element of said offense that a weapon be used was clearly established by Roy's act of utilization of a most deadly class of weaponry, a shotgun. Clearly, Willie May was the hapless recipient of "grievous bodily harm" since she sustained a clear, through and through wound measuring three to four inches in diameter to the left thigh and a second nonpenetrating wound measuring $2 \times 5$ inches to the right thigh. Lastly, the element of malice was

---

[2] The Pennsylvania Penal Code of June 24, 1939, P. L. 872, 18 PS §4708, contains no definition of assault and battery, but simply states: "Whoever commits an assault and battery, or an assault, is guilty of a misdemeanor . . ." Thus, we must look to the common law definition of a simple assault and battery which is an intentional act resulting in the harmful and offensive contact or touching of the person: Sum. Pa. Jur., Criminal Law §§172-182.

[3] The Pennsylvania Penal Code of June 24, 1939, P. L. 872, 18 PS §4709, defines the criminal offense of aggravated assault and battery as follows: "Whoever unlawfully and maliciously inflicts upon another person, either with or without any weapon or instrument, any grievous bodily harm, or unlawfully cuts, stabs or wounds any other person, is guilty of a misdemeanor . . ." Moreover, under this section of The Penal Code, the offense of aggravated assault and battery consists of either of two distinct acts: (1) the unlawful and malicious infliction, with or without a weapon, of grievous bodily harm; and (2) the unlawful cutting, stabbing or wounding of another, which implies the use of a weapon, at least as to the cutting and stabbing: Commonwealth v. Houck, 43 D. & C. 687 (1942). Further, unlike the case of a simple assault and battery, the additional element of malice must be established in order to convict a defendant of aggravated assault and battery: Commonwealth v. Ireland, 149 Pa. Superior Ct. 298, 27 A. 2d 746 (1942).

present in Roy's act of inflicting grievous bodily harm upon the person of Willie May.[4]

There can be no question that Roy acted maliciously in shooting Willie May. Angered by the shoving match with Willie May in the first floor apartment, he ran to the basement to arm himself with a shotgun. After his confrontation with Willie May at the laundry room, in which she abandoned her own purpose in retreat, he pursued her the length of the basement, and used her as the target for his close-range shotgun blast when she had ascended halfway up the basement staircase. At this point, in the light of the humane and reasonable alternative of permitting Willie May to ascend the entire staircase in retreat by desisting from an exhibition of marksmanship, Roy's act in firing the weapon was uncalled-for, wicked, callous and in complete disregard of its likely harmful effects on Willie May.

The Pennsylvania Penal Code of June 24, 1939, P. L. 872, 18 PS §4710, in pertinent part, defines the crime of assault and battery with intent to kill as follows: "Whoever . . . stabs, cuts or wounds any person, or by any means causes any person bodily injury, dangerous to life, with intention to commit murder, is guilty of a felony . . . "

There is no question that Roy's close-range shotgun blast comes within the meaning of *any means* as

---

[4] Malice is not limited to a particular ill will, but comprehends reckless conduct from which injury is likely to result though actual intent to injure anyone is lacking: Commonwealth v. Raspa, 138 Pa. Superior Ct. 26, 9 A. 2d 925 (1939). Malice in the sense of a wicked disposition is evidenced by the intentional doing of an uncalled-for act in callous disregard of its likely harmful effects on others: Commonwealth v. Lovely, 436 Pa. 334, 260 A. 2d 466 (1970); Commonwealth v. Malone, 354 Pa. 180, 47 A. 2d 445 (1946).

stated in this section. In addition, Willie May sustained "bodily injury, dangerous to life." The large, gaping hole in her left thigh and the wound to her right thigh bled profusely. She pitifully aided herself by wrapping her thighs in bed sheeting available in the basement. A policeman rendered first aid by using his trouser belt as a tourniquet in attempting to stop the bleeding. This immediate first aid and quick police transportation to the hospital surely averted grave consequences to Willie May.

Lastly, Roy's act of shooting Willie May was performed with the mens rea of malice aforethought or the intent to kill. Of course, the mens rea or intent with which a person performs a specific act is, by necessity, a subjective state of mind provable only by his outward acts, declarations and the attendant circumstances. Further, there is a judicial presumption that every person intends to do what he does and that the natural, necessary and probable consequences of his acts were intended: Commonwealth v. Daynarowicz, 275 Pa. 235, 119 Atl. 77 (1922); 20 Am. Jur. 228, Evidence, §233; Sum. Pa. Jur., Criminal Law, §17.

While in the first floor apartment, Roy had been shoved about and humiliated by Willie May to such an extent that he rushed to the basement with impassioned anger. With this angry state of mind, his first act in the basement was to arm himself with a shotgun which he intended to use should the opportunity present itself. This opportunity presented itself when Willie May in retreating had ascended halfway up the basement staircase. A defendant's intent to kill or at least to inflict serious bodily harm may be inferred from the use of a deadly weapon: Commonwealth v. Sweeney, 281 Pa. 550, 127 Atl. 226 (1924); Killer v. Commonwealth, 124 Pa. 92, 16 Atl. 495 (1889); Com-

monwealth v. Eckhart, 430 Pa. 311, 242 A. 2d 271 (1968).

In this case, Roy wounded Willie May in the back of the thighs due to the singular fact that only this portion of her anatomy was open to his range of fire. As Willie May ascended the stairs, the basement ceiling obscured the more vulnerable upper portions of her body.

In conclusion, it is evident that Roy's act of shooting Willie May with a shotgun at close range in the only then observable portion of her body, when he had an unquestionable opportunity to permit her safe retreat by not firing, manifested a settled hatred of mind and was done with intent to kill or to inflict serious bodily harm.

Since the Act of June 15, 1951, P. L. 585, 19 PS §871,[5] a motion in arrest of judgment can be filed on the grounds that the evidence was insufficient to sustain the charge. In passing on a motion in arrest of judgment, the court must view the evidence in the light most favorable to the prosecution, consider all evidence actually received, whether or not the trial rulings thereon were correct, and accept as true and correct the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom, while ignoring evidence of defendant which the jury had the privilege of rejecting:

---

[5] "Hereafter in all criminal prosecutions in this Commonwealth in which the jury shall have rendered a verdict against the defendant, the defendant . . . may make a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge, and if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case."

P. L. E. Criminal Law, §§801-802. Upon an examination of the *entire trial record* in the light of these principles, the trial court is convinced that the verdicts were amply supported by the weight of the evidence.

## II. Verdict Contrary to Law

In his original written motions for new trial, defendant contended by general allegation that the verdict was contrary to the law and did not specify in what particular respect he alleged the trial court erred. Defense counsel persisted in this general approach at the time of oral argument on his motions for new trial and in arrest of judgment. The trial court is of the opinion that defendant was given a fair and impartial trial in which amply sufficient evidence was produced to establish his guilt of all crimes of which he was charged beyond a reasonable doubt, in which the court ruled properly on the admission and exclusion of evidence, in which the court considered all the evidence including defendant's extensive reputation evidence in its deliberations of defendant's guilt or innocence, in which the court properly determined that defendant could not lawfully assert the defense of self-defense, and in conclusion, in which no reversible error of law was made by the court.

## III. Cross-examination of Wife-Prosecutrix

Defendant asserts that the trial court erred in unduly restricting the cross-examination of wife-prosecutrix. It is fairly obvious that this *undue restriction* must refer to various rulings made by the court on objections to various of defense counsel's questions interposed in behalf of the attorney for the Commonwealth and not to the general latitude and scope of cross-examination permitted. In fact, at the close of his cross-examination, defense counsel stated: "Your

Honor, at this point, I have no further questions of this witness."

The trial court sustained objections to the following questions of defense counsel on cross-examination:

"Q. Who looked after the children while you were in the hospital?"[6]

"Q. Let me ask you this: After you came out of the hospital, did you return home to live?"

"Q. Up until December of 1968, didn't you live in the same house with your husband after this incident?"

The court sustained objections to all of these questions for the reason that they sought to elicit testimony on issues irrelevant to the issues in the case then at trial. The question of what evidence is relevant is largely a matter of reason and common sense and the standard to determine the admissibility of any proferred evidence as relevant is that it must logically and legally relate to the issues on trial or any fact which is involved therein. See Sum. Pa. Jur. Evidence, §§3, 15-22; Brown, Pa. Evidence, §1-3, 13.

In short, without need of protracted discussion, in reason and common sense, the identity of the person

---

[6] The lower court's recollection of the sequence of events at trial indicates error in the transcription and/or typing of the notes of testimony:

"Mr. Wochok: I object."

"The Court: Overruled." (Should be: *Sustained*)

"Mr. Wochok: (Should be: *Mr. Berkowitz*): On what grounds?"

"The Court: Relevancy."

"Are you trying to convert this into a domestic relations matter?"

"Mr. Berkowitz: Well, Your Honor, the thrust of my question will be to the intent."

"The Court: I sustain Mr. Wochok's objection. We are dealing with a criminal act, not an inquiry as to who took care of the children. I don't see where it can be relevant, and I sustain Mr. Wochok's objection."

who cared for Willie May's children while she was in the hospital, the residence to which Willie May returned upon her release from the hospital and the fact that she continued to cohabit with Roy for a period of over a year after she was shot were all matters irrelevant to the issues at trial.

The scope or limitation of cross-examination is largely within the discretion of the trial court, and its action will not be reversed in the absence of an abuse of such discretion: Commonwealth v. Woods, 366 Pa. 618, 79 A. 2d 408 (1951); Commonwealth v. Cheatham, 429 Pa. 198, 239 A. 2d 293 (1968); Commonwealth v. Smith, 193 Pa. Superior Ct. 499, 182 A. 2d 104 (1962); Commonwealth v. Olitsky, 184 Pa. Superior Ct. 144, 133 A. 2d 238 (1957); Commonwealth v. Cano, 182 Pa. Superior Ct. 524, 128 A. 2d 358 (1956); Commonwealth v. Mickens, 201 Pa. Superior Ct. 48, 191 A. 2d 719 (1963). There was no such abuse of discretion by the trial court in this case.

## IV. Self-Defense

Defendant argues that his act of shooting Willie May was privileged, since he was acting in defense of his own person at the time. The law of Pennsylvania with respect to a defendant's right of self-defense in a criminal proceeding was enunciated by the Superior Court, speaking through Gawthorp, J., in the case of Commonwealth v. Sacco, 98 Pa. Superior Ct. 347, 351-52 (1930), as follows:

"One who is assaulted in such a way as to induce in him a reasonable and well grounded belief that he is actually in danger of losing his life or of receiving great bodily harm, under the influence of such apprehension, will be justified in defending himself, whether the danger was real or only apparent, and though be mistaken in his reasonable conviction, he

will not be held criminally liable . . . *But the counter-attack which one delivers in such circumstances must not be wholly disproportioned to that which was being made upon him."* (Italics supplied.)

See also Commonwealth v. Sutton, 51 Pa. Superior Ct. 191 (1912); Commonwealth v. Mitchell, 181 Pa. Superior Ct. 225, 124 A. 2d 407 (1956).

There can be no question that Willie May initially engaged in a trek of aggressive and assaultive conduct designed to injure Roy. She inflicted a retaliatory shove to Roy's person during his second trip through the bedroom, and immediately after observing its physical effects on Roy forthwith rushed to the kitchen to arm herself with two knives. So armed, she returned to the bedroom, thereupon momentarily delaying her plans of attack due to his absence. The open exit door to the basement indicated Roy's presence there. Willie May sought out Roy with two knives in one hand and a .32 caliber revolver which was unloaded in the other. Her aggression continued to the laundry room door. Upon opening the door, Willie May encountered more than she had bargained for in the person of Roy with a double barrelled shotgun in one hand and the shells in another.

Had Roy shot Willie May while she was standing at the laundry room door, he would have acted in self-defense. Certainly, at that time, the sight of Willie May with the apparent threat of the unloaded revolver in one hand and the actual threat of the two knives in the other, was a sufficient assault to induce a reasonable belief in Roy's mind that he was in danger of losing his life or receiving great bodily harm. However, the influence of this apprehension terminated when Willie May's assault terminated with her dropping of the knives and revolver, her closing of the laundry room door, and her retreating from the battle line. At

this point of time, Roy became the moving party of aggression and had forfeited his right to defend himself.

"The right of self-defense exists only so long as the danger exists, as soon as the assailant desists there can be no further need of defense, and if the person defending himself pursues his assailant after the latter has given up the attack, and inflicts injury on him, he is liable both civilly and criminally." American Jurisprudence, Vol. 4, Sec. 39, P. 148. See also State v. Perkins, 88 Conn. 360, 91 Atl. 265 (1914); Reber v. Sandoz, 63 So. 2d 876 (La. App.) (1953); State of Maine v. Allen, 235 A. 2d 529 (Me., 1967).

With his former adversary in retreat from the field of battle, Roy, in lieu of performing an act of honor in the form of permitting her safe escape by not shooting, chose the path of the despicable and cowardly by blasting her in the back of the thighs at close range.[7] The residual pellets from the blast which pierced completely through Willie May's left thigh are embedded at about the midpoint of the basement stair-

---

[7] The prosecution and defense stipulated to the admissibility of a medical report from Misericordia Hospital descriptive of the injuries sustained by the prosecutrix. This report appears to indicate that the shotgun blast to the left thigh entered the front of the thigh and exited to the rear. This report was unsigned. In the absence of any proof of the identity of the person preparing this report and his medical qualifications, if any, the trial court considered it of little evidentiary value. Clearly entitled to more weight as evidence of the nature of the wound sustained by the prosecutrix were the statements of Dr. Raymond J. Lodice, Police Surgeon, the prosecutrix, and the defendant. In describing the two wounds of the prosecutrix, Dr. Lodice states: "One was a large irregular wound back of the left leg, and the other was a linear, a somewhat ragged wound on the back of the right leg." The prosecutrix's description of the incident indicates that she was running up the staircase when shot. Most importantly, defendant, who did the shooting, states that he "hit her in the back of the leg."

case and serve as lasting monuments commemorative of the carnage of that day.

## V. New Trial in the Interests of Justice

Defendant demanded a new trial on the ground that *justice* dictated same. The granting of a new trial in the interests of justice lies in the discretion of the trial court to be exercised for proper reasons in a proper case: Commonwealth v. Jones, 303 Pa. 551, 154 Atl. 480 (1931); Commonwealth v. Wilson, 210 Pa. Superior Ct. 424, 234 A. 2d 63 (1967); Commonwealth v. Brown, 192 Pa. Superior Ct. 498, 162 A. 2d 13 (1960); Commonwealth v. Kauffman, 190 Pa. Superior Ct. 444, 154 A. 2d 269 (1959); Commonwealth v. Davis, 183 Pa. Superior Ct. 257, 130 A. 2d 217 (1957); Commonwealth v. Smith, 3 D. & C. 2d 228, 103 P. L. J. 164 (1955). In the instant case, defendant received a fair and impartial trial, the evidence properly in the record was conclusively sufficient to establish defendant's guilt beyond a reasonable doubt, the verdicts of the court were not contrary to law, and no proper reasons are present to justify the grant of a new trial. In short, in the opinion of the trial court, the present case is one in which the interests of justice were served by defendant's conviction and punishment.

## VI. Reputation Evidence of Defendant

In his brief in support of a motion for a new trial, defendant's attorney asserted as a further reason for the granting of a new trial the fact that the trial court *disregarded* the substantial reputation testimony offered in behalf of defendant. It is a fact that the defense introduced six witnesses who had known defendant for variously long periods of time and who testified to the reputation of defendant as a good, *peaceful,* sober and law-abiding citizen in the com-

munity. However, in the absence of any evidence whatsoever in the trial record indicating that defendant was not given a full, fair and complete opportunity to present as much reputation evidence as he desired, and in the further absence of any indication that such reputation evidence was not considered by the trial court in its deliberations pertaining to his guilt or innocence, we can interpret usage of the word *disregard* by defendant as indicative only of his disappointment that the proferred reputation testimony was not sufficient in itself to create a reasonable doubt in the mind of the trial court as a fact finder and thereby produce his acquittal, its only and proper function.

Evidence of good character and reputation does not raise a distinct issue but should be taken into consideration with all other evidence in the case. Such evidence when offered in a criminal case is substantial and positive evidence, not a mere make-weight to be considered in a doubtful case, and it may of itself create a reasonable doubt and thereby produce an acquittal. However, if the jury is satisfied beyond a reasonable doubt, *and from all the evidence, including character,* that defendant is guilty, evidence of good character should not overcome the conclusion which follows from that view of the case: Henry, Pennsylvania Evidence, §§159, 163; Commonwealth v. Wills, 72 Pa. Superior Ct. 73 (1919). (Italics supplied.)

In the instant case, the trial court, in the exercise of its function as a fact finder, weighed *all of the evidence in the record, including all reputation evidence of the defense,* and found defendant guilty. Moreover, upon appeal, the reviewing court will not interfere if there is evidence supporting the verdict or decision below: P.L.E., Criminal Law, §957.