Commonwealth *v.* Walker, Appellant.

Argued November 14, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John W. Packel*, Assistant Defender, with him *Melvin Dildine*, Assistant Defender, and *Herman I. Pollock*, Defender, for appellant.

*John A. McMenamin*, Assistant District Attorney, with him *Alan J. Davis*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 3, 1968:

This is an appeal from the Order of the Superior Court affirming the judgment of sentence of the Court of Quarter Sessions of Philadelphia County.

On March 24 and 25, 1966, Culber Walker was tried before a Judge without a jury on charges of conspiracy, assault and battery, aggravated assault and battery, and aggravated robbery. He was found guilty on all charges and sentenced to one to ten years. He thereafter appealed to the Superior Court, and from its Order we granted an allocatur. The facts surrounding the crimes for which he was convicted may be summarized as follows:

On July 1, 1961, two masked men came into Harry Cohen's store and robbed him of approximately $200. One of the men hit Cohen on the head with the butt of his gun. As a result of this blow, Cohen bled profusely. Mrs. Cohen, who was in the back of the store, was also struck and injured by the robbers. A bystander, Mrs. Jacqueline Moore, noticed the two men coming out of the store and noted that they were wearing masks. She saw the men jump into a white or cream-colored car, and noticed the license plate on the car. Neither Cohen nor his wife (who called the police) was able to identify Walker as one of the men who entered the store. Moreover, Mrs. Moore was not able to identify Culber Walker as one of the men (robbers) who came out of the store or jumped into the car. She testified that the car bore a New York license and that shortly before the men came out of the store she noticed someone was working on the car. Moreover, she admitted that she had testified at Walker's preliminary hearing that Culber Walker was not the man working on the car.

This robbery occurred at about 4:00 P.M. At about 8:00 P.M., Culber Walker approached two policemen

and stated that he had heard that his car was wanted by the police, and he wanted to know if this was true. The officers had apparently missed a broadcast pertaining to Culber Walker's car. Walker was not detained. However, the officers noted among Walker's papers a membership card in the Woodbine Club. Several hours later, the officers finally heard the broadcast that Walker's car was involved in a robbery. Culber Walker was the owner of a cream-colored automobile bearing the same New York license number noted by Jacqueline Moore, and neither he nor any witness explained how the robbers obtained his car if he was not with them. The officers then proceeded to the Woodbine Club, where Walker was arrested. A search of Culber Walker revealed three (dollar) bills stained with human blood. The blood was not tested with respect to its type or age.

The dollar bills which were on the person of the defendant and seized by the police at the time of defendant's arrest were admissible at defendant's trial: *Ker v. California,* 374 U.S. 23; *Com. ex rel. Ensor v. Cummings,* 416 Pa. 510, 514, 207 A. 2d 230; *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693. In *Commonwealth v. Gockley,* 411 Pa., supra, the Court said (pages 446-447): ". . . [I]t is not a violation of the Constitutional guarantee against unreasonable search and seizure for officers when making a *lawful** arrest with or without a search warrant, to discover and seize any evidence, articles or fruits of crime found upon the prisoner or upon the premises under his control at the time of his lawful arrest, if it is directly connected with the offense charged. . . . The maintenance of public order and the protection of society by efficient prosecution of criminals require it: [citations omitted.]"

---

* Italics throughout, ours.

However, the testimony concerning the admissions of defendant with respect thereto stand on a different footing. At the trial, Detective Douglas Alexander testified as follows: "Q. Detective, when you found the money on the defendant did you say anything to him about it? A. We asked him how he could account for the blood on the money. Q. What did he say? Mr. Packel: Objection. The Court: Overruled. A. He stated that he had injured his, I believe, his right thumb. Q. Right thumb? A. Right thumb. Q. Did you look? A. We checked the thumb and could find no injury. Q. No injury. That is all, Detective."

Walker was found guilty by the trial Judge on all bills of indictment. His motion in arrest of judgment and for a new trial was denied. He thereafter appealed to the Superior Court, and from its Order we granted an allocatur. He contends that the trial Judge erred in admitting the quoted portion of Detective Alexander's testimony. Walker's statement to Alexander was made after he had been arrested and was in the custody of the police, and it was made without any warning of his rights. Since this trial occurred in March 1966, *Escobedo v. Illinois,* 378 U.S. 478, governs this situation.

In *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765, the Court said (pages 543-544): "Since the trial herein concluded on April 22, 1965, evidence of the inculpatory statements involved was not rendered constitutionally inadmissible at trial merely because the police did not adhere to the 'in-custody' warnings prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). See, Johnson v. New Jersey, 384 U.S. 719 (1966); Davis v. North Carolina, 384 U.S. 737 (1966); and, Commonwealth v. Cheeks, 423 Pa. 67, 223 A. 2d 291 (1966). However, since the trial was subsequent to June 22, 1964, Escobedo v. Illinois, 378 U.S. 478 (1964), does apply, and whether or not Jefferson's

constitutional rights were violated at the time the statements were made must be determined in the light of that decision. See, Johnson v. New Jersey, supra.

"It is now settled that under Escobedo, an individual subject to police questioning is not deprived of his constitutional right to counsel unless such assistance is requested and denied. See, Commonwealth v. Schmidt, supra. Hence, since Jefferson made no request for counsel, the absence thereof, or an effective waiver of the right thereto, did not ipso facto render testimony of the statements constitutionally inadmissible. *But, Jefferson was also not advised of her right to remain silent and this, in our opinion, under the teaching of Escobedo precluded evidentiary use of the statements made to Officer Zevtchin.*"

The record is barren of any evidence proving or even indicating that Walker was advised of his right to remain silent. For this reason, Detective Alexander's testimony *concerning Walker's statement* to him should not have been admitted in evidence. This error would have been sufficient to necessitate the grant of a new trial.

Walker further contends that the Judgment should be reversed and an Order arresting judgment should be entered or a new trial granted. In *Commonwealth v. Carroll,* 412 Pa. 525, 194 A. 2d 911, the Court said (page 531) : " ' " " 'The test of the sufficiency of the evidence . . . is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, . . .: [citing numerous authorities.]' " ' "

The only admissible evidence to prove Walker's guilt was the fact that his automobile was used by the robbers in their get-away and that three of his dollar bills were bloodstained. There is no testimony or evidence by any of the eyewitnesses or bystanders which

in any way connects Walker to the crime or crimes and proves his guilt beyond a reasonable doubt. Considering all the evidence in this case, circumstantial and otherwise, in the light most favorable to the Commonwealth, we are convinced that the Commonwealth failed to prove defendant's guilt beyond a reasonable doubt. For these reasons, the Order of the Superior Court affirming the Judgment of sentence of the Court of Quarter Sessions must be reversed.

Judgment of sentence arrested; defendant discharged.