# Commonwealth *v.* Adams, Appellant.

Argued December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Peter T. Campana*, Assistant Public Defender, with him *Kenneth D. Brown*, Public Defender, for appellant.

*Gregory Smith*, with him *Harry C. Fithian, Jr.*, Assistant District Attorney, and *Allen E. Ertel*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 22, 1975:

The six Judges who heard this appeal being equally divided the judgment of sentence is affirmed.

OPINION BY PRICE, J., IN SUPPORT OF AFFIRMANCE:

This appeal by Louis E. Adams follows his conviction of Receiving Stolen Goods. A post-trial motion in arrest of judgment was denied and appellant was sentenced to not less than one year and not more than three years in prison and to pay the costs of prosecution.

It is the contention of the appellant that the evidence is insufficient to support his conviction. Reviewing the evidence in the light most favorable to the verdict winner, as we must, *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972), we find his contention to be without merit, and will affirm the judgment of sentence.

The facts of the case are that in the early morning hours of August 29, 1973, Officer Robert S. Krasucki of the Pennsylvania State Police and another officer were detailed to investigate a burglary at Miller's Lane in the City of Williamsport. The officers arrived at the scene about midnight, at which time they found a black and white 1961 Lincoln Continental. There was no one in or near the car. In the back seat of the car, clearly visible to the officers, was a quantity of meats, cheese and various other items in packages labeled "Reading Meat Terminal". The car was unlocked but there were no keys in the ignition switch. After investigating the car, the officers went to the Reading Meat Terminal, which was approximately 200 yards away from the car, where they found the east door to be open. They found a quantity of meat on the ground in line leading to the Lincoln Continental and also along a nearby creek leading toward the car. The owner of the store arrived, after being contacted by the officers, and identified the meat and cheese as the property of the Reading Meat Terminal.

The police dispatched a uniscope message to Harrisburg and learned the black and white Continental was registered in the name of the appellant. The car was towed to the police barracks where, after securing a search warrant, they forced open the trunk and found packages of meat and cheese which were identified as belonging to the Reading Meat Terminal.

Later that morning, State Police officers proceeded to the residence of Diane Frederick, where they believed appellant to be staying. Miss Frederick advised them that the appellant was not at her residence. They told her they wished to speak to appellant about a burglary in which his car was involved and if she saw him, to tell him to contact the State Police.

On September 6, armed with a warrant of arrest for the appellant, and acting on a tip that he was in Room 8 of the King's Motel on U.S. Route 15, the three officers went to that location. Miss Frederick came out to get into a taxi while the officers were waiting. She spotted the officers and shouted, "Louie, the cops." The door to the motel room was immediately slammed shut, and the officers received no response to their knocks. One of the officers went to the back and found the rear window had been broken out and there was no one in the room. After gaining entrance to the room, the officers found appellant's clothing and car keys. Three hours later the appellant, dressed in dungarees and barefoot, was picked up in South Williamsport. He was immediately placed under arrest. The keys found in appellant's room were found to fit the black and white Continental. There was no evidence that appellant had reported this car missing or stolen at any time up to the date of his arrest.

It is settled that the Commonwealth has the burden of proving three distinct elements of the crime of receiving stolen goods: (a) that the goods are stolen; (b) that the defendant received such goods; and (c) that he received them knowing, or having reasonable cause to know,

that they were stolen. *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). It is not disputed that the goods were stolen. The question before the court is whether the Commonwealth has proved sufficient circumstances to find beyond a reasonable doubt that the defendant received such goods, knowing, or having reasonable cause to know, that they were stolen. We believe that there is sufficient proof.

The record in this case fails to establish that appellant was ever in actual physical possession of the stolen goods. However, absent literal possession, a defendant can be said to be in possession of stolen goods when it is proved that he exercised conscious control or dominion over those goods. *Commonwealth v. Davis, supra.* Appellant here was shown to be the owner of the Lincoln Continental and he had a key in his possession which fit the car. Also, between August 29, 1973, and September 6, 1973, the car was not reported stolen or missing giving rise to the inference that the appellant still had control over his automobile. In *Commonwealth v. Stephany,* 228 Pa. Superior Ct. 184, 323 A.2d 368 (1974), the court held that the Commonwealth met its burden of showing ownership and control by proving that the defendant owned the car and had the key in his possession.

The appellant contends that the involvement of his car in a burglary is not sufficient to find him guilty beyond a reasonable doubt, citing *Commonwealth v. Walker,* 428 Pa. 244, 236 A.2d 765 (1968). In that case two masked men robbed the victim of $200. One of the men hit the victim over the head, causing him to bleed profusely. The defendant, Walker, was found to be the registered owner of the get-away car. Walker was later apprehended and charged with aggravated assault and battery and aggravated robbery. At that time the police officer found three one-dollar bills stained with blood on Walker's person. The Supreme Court arrested judgment of sentence and discharged the defendant holding that the evi-

dence was not sufficient to prove guilt. The Court, through Chief Justice BELL stated:

> "The only admissible evidence to prove Walker's guilt was the fact that his automobile was used by the robbers in their get-away and that three of his dollar bills were blood stained. . . . Considering all the evidence in this case, circumstantial or otherwise, in the light most favorable to the Commonwealth, we are convinced that the Commonwealth failed to prove defendant's guilt beyond a reasonable doubt." 428 Pa. at 249-250, 236 A.2d at 768.

In *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973), appellant was arrested on July 31, 1970, when observed driving a stolen car with a stolen license plate. The appellant pulled over at an officer's request and produced his driver's license but no owner's card. Prosecution's evidence established that the car (a 1963 Volkswagen) was stolen between July 7, 1970, and July 14, 1970, in Philadelphia. This constituted all of the evidence presented by the prosecution. This was held to be insufficient evidence to establish the elements of receiving stolen goods and the conviction was reversed.

In the present case there is additional evidence, other than possession and control of the automobile containing the stolen items, that make the present case readily distinguishable from both *Commonwealth v. Henderson, supra,* and *Commonwealth v. Walker, supra.* There is the possession of the only keys located which operated the automobile and unlocked the trunk containing additional stolen goods. There is the undisputed evidence of registration of the automobile in appellant's name, coupled with no report that the automobile was missing or stolen in the nine-day period which elapsed between the burglary and the appellant's arrest. There is the permissible inference drawn from Miss Frederick's prior knowledge of the facts and her presence at the motel with appellant on the day of the arrest that appellant knew of the involvement and location of his car.

It has been held that: "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis *in connection with other proof from which guilt may be inferred.*" *Commonwealth v. Osborne,* 433 Pa. 297, 302, 249 A.2d 330, 333 (1969) (Emphasis added). Appellant contends the Commonwealth failed to prove that he knew he was wanted. However, circumstantial proof of such knowledge may be sufficient. *Commonwealth v. Osborne,* at 303, 249 A.2d at 333. In the instant case the Commonwealth showed that the officers investigating this burglary went to the residence of Diane Frederick where they thought appellant was staying. He was not there, but Miss Frederick was. The officers told her to have appellant contact the State Police about his car's involvement in a burglary. It is beyond credulity to believe she did not tell appellant he was wanted, especially when the State Police went to the King's Motel and it was Miss Frederick who came out of the unit first and shouted, "Louie, the cops." At that moment the front door slammed shut and police later found that the appellant left the motel via a rear window which was broken.

The Commonwealth bases its case upon circumstantial evidence which we find to be sufficient to prove the appellant's guilt. In *Commonwealth v. Stephany,* 228 Pa. Superior Ct. 184, 187, 323 A.2d 368, 369, the court stated:

> "The usual rule as to the test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, or both, is whether, accepting as true all the evidence and reasonable inferences therefrom, upon which, if believed, the [fact finder] could properly base its verdict, it is sufficient in law to prove defendant's guilt beyond a reasonable doubt."

While guilt may never rest upon conjecture or surmise, a conviction may stand on circumstantial evidence. It is sufficient if the circumstances are consistent with

criminal activity even though they might likewise be consistent with innocent behavior. *Commonwealth v. Moore*, 226 Pa. Superior Ct. 32, 311 A.2d 704 (1973). As the Court explained in *Commonwealth v. Petrisko*, 442 Pa. 575, 580, 275 A.2d 46, 49 (1971): ". . . it is not necessary that each piece of evidence be linked to the [defendant] beyond a reasonable doubt. It is only necessary that each piece of evidence include the [defendant] in the group who could be linked while excluding others, and that the combination of evidence link the [defendant] to the crime beyond a reasonable doubt."

Judgment of sentence affirmed.

WATKINS, P. J., and JACOBS, J., join in this opinion.

———

OPINION BY HOFFMAN, J., IN SUPPORT OF REVERSAL:

Appellant contends that the evidence introduced at trial was insufficient to sustain his conviction for receiving stolen property.[1]

State Trooper Robert Krasucki testified that he discovered a black and white Lincoln Continental sedan parked on the berm of Miller's Lane in Williamsport, near the Reading Meat Terminal at approximately 1:30 a.m. on August 29, 1973. The back seat contained a large quantity of meat and cheese. Looking through the rear window, Trooper Krasucki noticed that at least one item bore a Reading Meat Terminal label; no one was seen at or around the automobile. He then proceeded to the Reading Meat Terminal, which was located approximately 200 yards west of the car. He discovered that the east side door of the Meat Terminal was open; no one was inside the building. He then traversed the path from the open door of the Meat Terminal to the sedan. The path led along the top of a dirt dike and along the side of a creek. Trooper Krasucki noticed "various items of meat"

———

1. Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa. C.S. §3925, effective June 6, 1973.

lying on the dike and by the side of the creek. The state police then contacted the owner of the Meat Terminal, who identified the stolen meat as his. The sedan was then towed to the State Police Barracks at Montoursville. After obtaining a search warrant, the police pried open the trunk of the sedan and found eight more rolls of cheese and meat, which were also identified by the owner as belonging to the Reading Meat Terminal. The value of the stolen goods was estimated as $500. The sedan found at the scene of the crime was registered in appellant's name.

On the morning of August 29, 1973, State Troopers William S. Jones and James Devore went to the residence of Diane Frederick, where they believed that appellant was staying. When they discovered that appellant was not there, Trooper Jones requested that Miss Frederick ask the appellant to contact him "about his car being involved in a burglary at the Reading Terminal."

Later, a confidential informant told the state police that appellant was staying at Room 8 at the King's Motel in South Williamsport. Three troopers, including Jones and Devore, went to the motel at approximately 10 a.m. on September 6, 1973, with a warrant for appellant's arrest. A taxi pulled up, and the troopers observed several people, including Miss Frederick, walking out of Room 8. Miss Frederick hollered "Louie, the cops!" The door to the room was shut and locked. Officer Devore went to the rear of the motel, and discovered that the rear window of Room 8 had been smashed out. Troopers Jones and Devore later located appellant on West Southern Avenue in South Williamsport, and arrested him. Appellant was wearing dungarees, but no shoes or shirt. A search of Room 8 at the King's Motel revealed a set of car keys which fit the Lincoln sedan.

After waiving his right to trial by jury, appellant was tried in the Court of Common Pleas of Lycoming County on February 25, 1974, before Senior Judge Webb, who

acquitted him of burglary[2] and theft by unlawful taking or disposition,[3] but convicted him of receiving stolen property. A motion to arrest judgment on the grounds of insufficiency of the evidence was denied, and on August 8, 1974, appellant was sentenced to one to three years' imprisonment. This appeal followed.

In a prosecution for receiving stolen property, the Commonwealth must prove beyond a reasonable doubt the three elements of the crime: (1) that certain goods were stolen; (2) that the defendant received some or all of the goods; and (3) that he received them knowing or having reason to know that the goods were stolen.[4] *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971). In this case, there is insufficient evidence to prove beyond a reasonable doubt that appellant ever received the stolen goods.

"Absent literal possession, a defendant can be said to be in possession of stolen goods only when it is proved that he exercised conscious control or dominion over those goods." *Commonwealth v. Davis*, supra, at 15, 280 A.2d at 121. Although the stolen goods were found in a car registered in the name of appellant, we cannot infer from this fact that appellant ever exercised control or dominion over the goods.

Since *Commonwealth v. Walker*, 428 Pa. 244, 236 A.2d 765 (1968), the Pennsylvania Supreme Court has recognized that the fact that a person's car is used in the commission of a crime is insufficient evidence to sustain a conviction for that crime. In *Walker*, two masked men robbed the victim of approximately $200. One of the

---

2. Act of December 6, 1972, supra, n. 1; 18 Pa. C.S. §3502.

3. Act of December 6, 1972, supra, n. 1; 18 Pa. C.S. §3921.

4. These three requirements are now embodied in the Crimes Code, supra, n. 1, §3925(a): "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

men hit the victim on the head with the butt of a gun, as a result of which he bled profusely. The getaway car was discovered to be registered in Walker's name; in addition, three dollar bills stained with human blood were discovered on Walker's person at the time of his arrest. Nevertheless, the Supreme Court held that this evidence was insufficient to convict Walker of conspiracy, assault and battery, aggravated assault and battery, or aggravated robbery, and arrested judgment on all charges.

In *Commonwealth v. Russell*, 444 Pa. 4, 279 A.2d 185 (1971),[5] the victim's next-door neighbor noticed a strange car in their common driveway at 11 p.m. one night. This car was registered in the appellant's name. When the victim returned home the next afternoon, she discovered that one of the doors to her house had been forced and that a number of items had been stolen, including an antique mantel clock. Eleven days later, a clock identified by the victim as the stolen antique was discovered at the premises listed as appellant's residence on his vehicle registration. (The premises were apparently being occupied by appellant's sister-in-law.) Despite this combination of circumstances, the Supreme Court held that there was insufficient evidence of receiving stolen property, and granted appellant's motion in arrest of judgment. The Court noted that "the presence of appellant's car, without more, would not prove appellant's presence at the victim's home on the night of the burglary. At most, it would prove that either appellant, someone driving the car with appellant's permission, or someone who had stolen appellant's car, was present at the victim's house on the night of the burglary."[6]

---

5. Opinion by Justice O'Brien. Four Justices concurred in the result; one Justice dissented without opinion.

6. *Russell* was a stronger case for the Commonwealth than the instant case, because "when appellant was arrested in New Jersey, he was in possession of his car. This substantially eliminates the possibility that his car was being operated by a car thief

On the basis of *Walker* and *Russell,* it appears that the mere fact that appellant's car was used in connection with the receipt of stolen goods is insufficient to convict appellant of that crime. The only other fact introduced by the Commonwealth to prove appellant's guilt was his flight when threatened with arrest. This flight, however, is of so little evidentiary weight that it cannot make up for the lack of direct evidence implicating appellant.

First, the Commonwealth has not proven that appellant's flight when confronted by the state police was even related to this case. Trooper William Jones, a Commonwealth witness, indicated that there was a bench warrant outstanding against appellant on a separate charge. This alone might have accounted for appellant's flight. In addition, no evidence was introduced to prove that Miss Frederick ever told appellant that he was under investigation in connection with the instant case.

Second, even assuming that appellant's flight could be related to the instant receiving stolen property charge, recent decisions have accorded little weight to such circumstantial evidence. "The evidentiary value of flight, however, has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as an indicium of guilt. We no longer hold tenable the notion that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' The proposition that 'one who flees shortly after a criminal act is committed or when he is accused of committing it does so because he feels some guilt concerning that act' is not absolute as a legal doctrine 'since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the

---

when it was viewed at the victim's house." *Russell,* supra, at 9, 279 A. 2d at 188. Here, the Commonwealth can only state that appellant's car keys were apparently in his possession at the time of his arrest. Many car owners keep more than one set of keys, and car thieves commonly steal cars without using the owner's keys.

guilty parties, or from an unwillingness to appear as witnesses.' " *Bailey v. United States,* 416 F.2d 1110, 1114-1115 (D.C. Cir. 1969) (footnotes omitted). The Pennsylvania Supreme Court has held that flight, even by an appellant actually present at the scene of the crime, is insufficient to sustain a conviction. *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973), citing *Bailey v. United States,* supra. Flight, by itself, cannot constitute probable cause for arrest, or even justify an investigatory stop. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973).

In *Commonwealth v. Bailey,* 448 Pa. 224, 292 A.2d 345 (1972), a warehouse employee saw a man steal a box of hosiery, throw it over the wall surrounding the warehouse, and then climb over the wall. Approximately three minutes later, the warehouse employee, in hot pursuit identified the thief as a passenger in a car driven by Bailey. The car was stopped about a block and a half from the warehouse. The employee demanded that the men get out of the car and open the trunk, but Bailey drove away without responding. The Supreme Court reversed Bailey's conviction for larceny: "The Commonwealth argues since appellant drove the car away when asked to get out and open the trunk, this establishes his guilt. . . . Although the fact that Bailey drove the automobile away without responding to [the warehouse employee's] request to permit a search of the trunk might give rise to an inference that the stolen goods were secreted therein with Bailey's knowledge, it is just as reasonable to assume therefrom that Bailey knew nothing of the crime, and when accused of being involved in a crime of which he knew nothing about, he took flight out of fear. Convictions in criminal cases may not and will not be allowed to stand on guesswork or conjecture." *Bailey,* supra, at 229-230, 292 A.2d at 347.

The judgment of sentence should be reversed, and appellant discharged.

Cercone and Spaeth, JJ., join in this opinion.